296 Ga. 406
FINAL COPY

S14A1431.  GRISSOM v. THE STATE.


BENHAM, Justice.

Michael Grissom appeals his convictions for felony murder and other offenses relating to the death of Ron Strozier.  The relevant events arose out of a feud between Grissom's friend and co-defendant Markell Dorsey, and Dorsey's associates, on the one side, and an individual known only as "D-Bone," and D-Bone's associates, on the other.[1]  For the reasons set forth herein,

---

[1]  The crimes occurred on August 1, 2005.  A Fulton County grand jury returned an indictment against appellant and four co-defendants on March 24, 2006, charging appellant with murder (Count 1); four counts of felony murder (Counts 2 (aggravated assault with a deadly weapon), 3 (conspiracy to commit the crime of aggravated assault with a deadly weapon against Strozier), 4 (conspiracy to commit the crime of aggravated assault with a deadly weapon against D-Bone, thereby causing the death of Strozier), and 5 (conspiracy to commit the crime of criminal damage to property in the first degree, thereby causing the death of Strozier)); two counts of aggravated assault (Counts 7 (upon the person of Strozier) and 14 (upon the person of Christina Green)); conspiracy to commit aggravated assault (Counts 8 (against Strozier) and 9 (against D-Bone)); conspiracy to commit criminal damage to property in the first degree (Count 10); and three counts of possession of a firearm during the commission of a felony (Counts 15 (murder and/or aggravated assault against Strozier), 16 (aggravated assault of Green), and 17 (conspiracy to commit one or more of the felonies set forth in the other counts)).  Appellant and his co-defendants were jointly tried by a jury April 3-28, 2006, and appellant was found guilty of voluntary manslaughter as a lesser included offense of murder (Count 1); three counts of felony murder (Counts 2, 4, and 5); one count of aggravated assault (Count 7); one count of conspiracy to commit aggravated assault (Count 9); conspiracy to commit criminal damage to property in the first degree (Count 10); and two counts of possession of a firearm during the commission of a felony (Counts 15 and 17).  Appellant was found not guilty of felony murder (Count 3) and conspiracy to commit aggravated assault (Count 8).  The trial court entered a directed verdict on aggravated assault (Count 14) and possession of a firearm during the commission of a felony (Count 16).  The trial judge sentenced appellant to life imprisonment for felony murder (Count 2) and imprisonment for five years for each of the two convictions for possession of a firearm in the commission of a felony (Counts 15 and 17), to run concurrently with each other and consecutive to the sentence on Count 2.  For purposes of

we affirm the convictions but vacate the sentences imposed with respect to the convictions on two of the counts and remand for resentencing on those convictions.

Viewed in the light most favorable to the verdict, the evidence shows the feud commenced with a physical altercation on July 31, 2005, between Dorsey and D-Bone over comments D-Bone made about a man referred to as "Tay-Tay." Evidence was presented that Tay-Tay's real name was Dontavious Pettway. In the initial altercation, Dorsey was roundly beaten and, in order to exact revenge, Dorsey and co-defendant Rico Sims traveled from the Chastain West apartment complex where they were staying to an apartment complex located next door, known as Buckingham Court, where D-Bone lived. Dorsey challenged D-Bone and his associates to another fight. Sims was wearing a bullet-proof vest and wielding an assault rifle. During this exchange, D-Bone

sentencing, the trial court merged the convictions on the remaining counts into the life sentence for felony murder. Appellant, through new counsel, filed a motion entitled "Amended Motion for New Trial" on February 2, 2010, which was later amended, and the motion was heard on January 25, 2012. By order dated February 3, 2012, the trial court denied the motion. Appellant filed a notice of appeal on February 6, 2012, and this Court dismissed appellant's appeal by order entered October 29, 2012. Appellant, through new counsel, filed a "Motion for Out-of-Time Motion for New Trial" on November 1, 2012, which the trial court granted. Appellant filed a motion for new trial on December 12, 2012. The trial court denied the motion for new trial by order filed November 14, 2013. Appellant filed a timely notice of appeal on November 25, 2013. The case was docketed in this Court to the September 2014 term for a decision to be made on the briefs.

2

and others, including Ron Strozier, disarmed Sims and took his weapon and vest. Later that day, D-Bone was overheard talking on the phone to someone who told D-Bone "y'all better tool up."

The following day, August 1, Grissom, Dorsey, and Sims were at the Chastain West home of a friend where Grissom told William Edwards he planned on shooting up D-Bone's car. A wooded vacant parcel of land separated the Chastain West complex from the Buckingham Court complex, and testimony established that trails ran through the woods and that the woods were known to be a place where drugs were sold and used. Later that evening, Grissom was seen leaving the woods moments after a loud shot rang out that sounded like a shotgun blast. In statements to police, Grissom and several of his co-defendants admitted they were in the woods around the time of the shotgun blast, but denied they were involved. Strozier's body was located in the woods the morning of August 2. An autopsy determined he had died from wounds to his neck and torso caused by buckshot from a shotgun blast, and the testimony established that the window of time for Strozier's death encompassed the time at which the shot was heard. A shotgun was recovered during the investigation of these events, and Grissom admitted to police that he had been in possession

of the shotgun and stated he obtained it from his cousin Dontavious Pettway, but Grissom denied he had used it. Edwards, who had known Grissom for several years at the time of the shooting and was familiar with his voice, overheard Grissom on the phone with Sims the day after Strozier was shot to death, telling Sims he had "shot someone in the head."

About an hour after the shotgun blast was heard, Grissom, armed with a .357 magnum handgun, traveled to Buckingham Court with Dorsey, Sims, and others in two separate cars, both of which had been stolen. A shootout between the two rival groups ensued, and Grissom admitted in his statement to police that he fired at least two shots from his handgun during this exchange. Grissom also admitted that after the car in which he was riding crashed into a fire hydrant, he dropped his handgun and fled the scene. Law enforcement later recovered the gun inside the crashed car. Christina Green, an eyewitness to the shootout, heard multiple gunshots and saw three or four individuals fleeing through the woods. Green ran across the street to avoid the gunfire.

1. Pursuant to the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the evidence presented at trial, as summarized above, was sufficient to support the verdict. Grissom's trial theory

4

was that Strozier, who was known to be a drug dealer, could have been killed by a customer or someone in the woods who wanted to rob him. Grissom also pursued a theory that Strozier was killed by another individual who was seen near the woods during the time frame in which Strozier was killed and who, according to testimony, was behaving in an uncharacteristic manner. Sufficient evidence was presented, however, from which the jury could find that Grissom directly committed the shooting that caused Strozier's death or was a party to that crime. When reviewing the sufficiency of the evidence this Court does not reweigh the evidence or resolve conflicts in testimony. *Caldwell v. State*, 263 Ga. 560, 562 (1) (436 SE2d 488) (1993). "Resolving evidentiary conflicts and inconsistencies and assessing witness credibility are the province of the fact finder, not the appellate court. *Miller v. State*, 295 Ga. 769, 771 (1) (764 SE2d 135) (2014)." *Browner v. State*, 296 Ga. 138, 141 (1) (___ SE2d ___) (2014). Further, in cases involving circumstantial evidence, questions of the reasonableness of hypotheses are generally to be decided by the jury that heard the evidence. *Smith v. State*, 290 Ga. 428 (1) (721 SE2d 892) (2012). From the evidence, the jury was not required to accept Grissom's theory that someone else committed the crime. See *Dupree v. State*, 295 Ga. 655, 656 (763 SE2d 459)

5

(2014) (although the defendant argued self-defense, the jury was not required to draw this conclusion from the evidence); *Buckner v. State*, 321 Ga. App. 715 (4) (742 SE2d 528) (2013) (from the evidence, the jury could have concluded there was no reasonable hypothesis that the crime could have been committed by someone else).

Likewise, with respect to the conspiracy counts for which Grissom was convicted, we also find the evidence was sufficient to support the verdict. "Conduct which discloses a common design, even without proof of an express agreement between the parties, may establish a conspiracy." (Citations and punctuation omitted.) *Mathis v. State*, 293 Ga. 837, 841 (4) (750 SE2d 308) (2013). Here, the evidence shows the shootout was planned and coordinated for the common purpose of extracting revenge upon D-Bone and his associates. The manner in which appellant and his co-defendants traveled to the scene of the shootout, along with the other evidence presented, is sufficient to demonstrate the existence of a conspiracy to commit aggravated assault upon D-Bone and criminal damage to property in the first degree.

In its verdict, the jury found Grissom guilty of felony murder pursuant to Count 4 of the indictment (alleging conspiracy to commit the crime of aggravated

assault with a deadly weapon against D-Bone, thereby causing the death of Strozier) and Count 5 (alleging conspiracy to commit the crime of criminal damage to property in the first degree, thereby causing the death of Strozier). Without citation to authority, Grissom argues no legal connection exists between Strozier's death and the alleged conspiracies to sustain these verdicts on the felony murder charges. But Grissom ignores the fact that he was also found guilty of felony murder pursuant to Count 2, in which the underlying felony is aggravated assault with a deadly weapon upon Strozier, and it was this felony murder count on which his conviction and life sentence was based. Because Grissom was convicted and sentenced on the Count 2 felony murder charge, the verdicts for felony murder pursuant to Counts 4 and 5 were surplusage and vacated. See *Tesfaye v. State*, 275 Ga. 439, 442 (4) (569 SE2d 849) (2002). Thus, the nexus between Strozier's death and the predicate acts alleged in these other two felony murder counts is irrelevant to Grissom's conviction and sentencing in this case.

Nevertheless, as set forth in *Hulett v. State*, 296 Ga. 49 (766 SE2d 1) (2014), if this Court notices a merger error in an appeal we may correct the error even if it was not raised on appeal. Id. at 54. In this case, because the felony

murder verdicts for Counts 4 and 5 were properly treated as surplusage, "the predicate felony of the felony murder charge does not merge as a matter of law and is vacated only if it merges as a matter of fact into the felony murder conviction." *Tesfaye*, 275 Ga. at 442. Here, we find the trial court improperly merged with the felony murder conviction on Count 2 the convictions on Count 9 (alleging conspiracy to commit aggravated assault upon D-Bone) which served as the predicate felony for the Count 4 felony murder charge, and Count 10 (alleging conspiracy to commit criminal damage to property) which served as the predicate felony for the Count 5 felony murder charge.

The test for determining whether one crime is included in another, and therefore merges as a matter of fact, is the "required evidence" test — whether conviction for one of the offenses is established by proof of the same or less than all the facts required to establish the other crime pursuant to OCGA § 16-1-6 (1). See *Drinkard v. Walker*, 281 Ga. 211, 215 (636 SE2d 530) (2006). Conspiracy to commit the crime of aggravated assault with a deadly weapon against D-Bone and conspiracy to commit the crime of criminal damage to property in the first degree are not established by the same or less than all the facts required to establish that Grissom caused Strozier's death by committing the felony of

8

assault with a deadly weapon upon Strozier, for which Grissom was convicted pursuant to Count 2. Pursuant to Counts 9 and 10, Grissom was convicted of felonious acts against D-Bone and his property, whereas pursuant to Count 2, Grissom was convicted of the death of Strozier while engaged in the act of aggravated assault with a deadly weapon upon Strozier. Conspiracy to commit the two alleged injuries to D-Bone and his property did not require proof of causing Strozier's death, and proof of causing Strozier's death as a result of aggravated assault upon him did not require proof of acts for which Grissom was found guilty in Counts 9 and 10. See *Thomas v. State*, 292 Ga. 429, 433 (4) (738 SE2d 571) (2013). Consequently, we vacate that portion of the sentencing order whereby the trial court merged the convictions on Counts 9 and 10 with the felony murder conviction for purposes of sentencing, and we remand for further sentencing for those convictions.

2. At trial, William Edwards testified that he told police Dorsey informed him of a shootout with D-Bone and that Dorsey said he had seen Grissom walking out of the woods just after hearing a gunshot from the woods. Grissom's counsel objected on the ground of hearsay, and the objection was overruled. On appeal, Grissom argues that because no conspiracy was shown,

no exception to the hearsay rule is established in the case, and thus the admission of testimony about what Dorsey told the witness was reversible error. We disagree. A co-conspirator's "statements are admissible [under former OCGA § 24-3-5] when the State establishes a prima facie case of conspiracy independent of the co-conspirator's statement at any time before the close of evidence."[2] *Williams v. State*, 293 Ga. 750, 753 (2) (749 SE2d 693) (2013). As set forth in Division 1, sufficient evidence was presented at trial to support the existence of a conspiracy. Although no conspiracy was alleged with respect to Strozier's shooting, the conspiracy set forth in the indictment involved traveling between the two apartment complexes for criminal purposes, and thus testimony regarding this out-of-court statement of one of the co-conspirators to the witness was properly admissible. Further, Grissom admitted to police that he had been in the woods at the time he, too, heard the gunshot coming from within the woods. No error is shown.

Grissom also argues the testimony's admission violated his right to confront his accusers. Grissom did not object to the testimony on the ground that

---

[2] Statements by a co-conspirator are now governed by the new Evidence Code at OCGA § 24-8-801 (d) (2) (E).

it violated the Confrontation Clause of the Sixth Amendment, however, and thus he waived his right to raise this alleged error on appeal. See *Walton v. State*, 278 Ga. 432, 434 (1) (603 SE2d 263) (2004). Moreover, as Dorsey's statements were made to a friend and not to a law enforcement officer, they were not testimonial in nature, and their admission did not violate the Confrontation Clause. See *Miller v. State*, 289 Ga. 854 (3) (717 SE2d 179) (2011); see also *Young v. State*, 291 Ga. 627 (3) (732 SE2d 269) (2012) (the testimony of one to whom a co-defendant spoke the day after the crimes were committed regarding what the co-defendant told the witness about appellant's participation in the crimes did not violate the appellant's right to confront the witnesses against him). Thus, this argument lacks merit.

3. Edwards testified about a conversation co-defendant Sims had in his presence on a cell phone that was loud enough for the voice on the other end of the line to be heard by him. Edwards testified he heard a voice that sounded like Grissom's identify himself as "Mike," and tell Sims he had shot someone in the head. On appeal, Grissom asserts no foundation was laid for this testimony. Grissom, however, did not object to this line of questioning on the ground of lack of foundation, and thus this issue was not preserved for appellate review. See

11

*Hall v. State*, 292 Ga. 701 (2) (743 SE2d 6) (2013) (failure to raise a specific ground of objection to evidence is waived for appellate review unless raised at the time the evidence is offered).

Additionally, the prosecutor attempted to impeach Edwards's testimony by asking him about prior inconsistent statements Edwards made to the prosecutor during a pre-trial interview. Appellant argues that, during this line of questioning, the prosecutor improperly testified. Again, however, Grissom did not object to the prosecutor's manner of questioning the witness and thus this objection likewise was not preserved for appellate review.

4. Grissom asserts he received ineffective assistance of counsel as a result of his trial counsel's failure to make proper objections to, or to move to strike, Edwards's testimony about what he overheard on Sims's telephone conversation. The record shows a proper foundation was laid for Edwards's testimony that he heard Grissom's voice on the telephone conversation with Sims. Edwards's credibility and the weight of the evidence regarding whether it was Grissom who made the statement overheard by Edwards were for the jury to determine. See *Moore v. State*, 293 Ga. 676 (6) (748 SE2d 419) (2013). The out-of-court statements made by a defendant are admissible and do not amount to hearsay.

See *Dukes v. State*, 290 Ga. 486, 488 (4) (722 SE2d 701) (2012). Trial counsel was not ineffective, therefore, for failing to object to the testimony on the ground of lack of foundation or hearsay because such objections would have been meritless. Consequently, counsel's failure to make these objections does not establish deficient performance, and Grissom has failed to meet the required first prong of the test outlined in *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984), for establishing ineffective assistance of counsel. See *Jordan v. State*, 293 Ga. 619 (3) (748 SE2d 876) (2013) (trial counsel's failure to make a meritless objection does not constitute evidence of ineffective assistance).

Likewise, we find Grissom failed to show his trial counsel provided ineffective assistance for failing to object to the prosecutor's questioning of Edwards about his prior inconsistent statements to the prosecutor on the ground that the prosecutor, during this line of questioning, was improperly testifying. The prosecutor was entitled to impeach the witness with prior inconsistent statements. At the motion for new trial hearing, trial counsel testified he chose to lodge "asked and answered" objections to this line of questioning in an effort to halt further testimony. He further testified he did not consider objecting on the

ground that the prosecutor was converting himself into a witness as he was most concerned with stopping the prosecutor's "browbeating" of the witness. In fact, the second time counsel raised an objection on this ground, it was sustained and the prosecutor was forced to move on. "Decisions relating to strategy and tactics 'must not be judged by hindsight or the ultimate result of the trial.' [Cit.]" *Browder v. State*, 294 Ga. 188, 194 (751 SE2d 354) (2013). Again, Grissom has failed to establish deficient performance of trial counsel in order to meet the first prong of the *Strickland* test. If either prong of the *Strickland* test is not met, then this Court need look no further, and ineffective assistance of counsel is not shown. See *Lawson v. State*, 296 Ga. 1, 3 (2) (a) (764 SE2d 816) (2014). Since Grissom has failed to meet one of the required prongs with respect to each assertion of trial counsel's failure to object to Edwards's testimony, he has failed to establish ineffective assistance of counsel.

5. At the conclusion of the State's case, the trial court engaged in a colloquy with trial counsel, though in the presence of the jury, regarding documentary evidence that had been tendered by the State but not yet admitted into evidence. In an apparent attempt to speed the admission of this evidence, the trial judge instructed counsel that she would consider all pre-trial objections

14

to the evidence to be "preserved for interest of appeal and not waived by your failure to stand and object to that long list of exhibit numbers." According to Grissom, the trial court's statement improperly referenced the availability of appellate review, thus intimating that appellant would be found guilty and would need to appeal his forthcoming conviction, in violation of OCGA § 17-8-57. Further, he claims the reference to an appeal could have led the jury to feel its responsibility was lessened because of the possibility that a conviction could be appealed.

OCGA § 17-8-57 provides: "It is error for any judge in any criminal case . . . to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. . . ." Because the language of this statute is mandatory, any violation of the statute requires a new trial. *Rouse v. State*, 296 Ga. 213, 214 (765 SE2d 879) (2014). An alleged violation of OCGA § 17-8-57 is analyzed under the "plain error" standard of review; therefore, Grissom's failure to object to this comment at trial does not preclude appellate review of this issue. *Chumley v. State*, 282 Ga. 855, 858 (2) (655 SE2d 813) (2008). In light of the mandatory nature of the statute, all that is required in order to demonstrate the necessity for the grant of a new trial is proof that the statute was

violated. Id.

Grissom argues that this Court's holding in *Gibson v. State*, 288 Ga. 617 (2) (706 SE2d 412) (2011) requires reversal. But the facts of this case are materially distinguishable from those in *Gibson*, in which the trial court's reference to the defendant's right to appeal was made to the jury in response to a question sent to the court during jury deliberations. Here, the comment about preservation of pre-trial objections to evidentiary exhibits for appeal was made by the judge to counsel, and "[t]he rule which prohibits an expression or intimation of opinion by the trial court as to what has or has not been proved, OCGA § 17-8-57, does not generally extend to colloquies between the judge and counsel regarding the admissibility of evidence." (Citations and punctuation omitted.) *Adams v. State*, 264 Ga. 71, 76 (7) (440 SE2d 639) (1994), rev'd on other grounds, *Ross v. State*, 268 Ga. 122, 125 (6) (485 SE2d 789) (1997). In *Mitchell v. State*, 293 Ga. 1, 3 (3) (742 SE2d 454) (2012), this Court noted that not all comments made by a trial court regarding appeals require reversal of a conviction, and that "'[m]ere abstract references to appellate courts, which do not convey the trial court's opinion, are not necessarily reversible error.'" (Citation omitted.) Id. We find no reversible error resulted from the trial court's reference

16

to the preservation of objections for appeal with respect to admitted documentary evidence.

6. One of the trial witnesses testified that she spoke with co-defendant Dorsey after Strozier's death, that Dorsey told her he had nothing to do with the death, but that he heard "Mike did it." During a discussion outside the presence of the jury, the trial court denied Grissom's motion for mistrial, but sustained his objection to admission of the testimony and granted the request for curative instructions. The court informed counsel that the renewal of the motion for mistrial would be preserved for the record so that it need not be renewed after the curative instructions were given. When the jury returned, the court gave curative instructions that the testimony was inappropriate, was being struck from the record, and should not be considered. The court also reminded the jury that while the evidence should be considered as a whole, the jury was to consider whether the State had carried its burden as to each defendant separately.

"Whether to grant a motion for mistrial is within the trial court's sound discretion, and the trial court's exercise of that discretion will not be disturbed on appeal unless a mistrial is essential to preserve the defendant's right to a fair trial." *Ottis v. State*, 271 Ga. 200, 201 (3) (517 SE2d 525) (1999). This

witness's objectionable statement was not solicited by the prosecutor, and, considering the curative instructions given, the decision to deny the motion for mistrial was not an abuse of discretion and did not violate Grissom's right to a fair trial. "Qualified jurors under oath are presumed to follow the instructions of the trial court." (Citations and punctuation omitted.) *Lewis v. State*, 287 Ga. 210, 213 (695 SE2d 224) (2010).

Judgment affirmed in part and vacated in part, and case remanded for resentencing. All the Justices concur.

S14A1431. GRISSOM v. THE STATE.

NAHMIAS, Justice, concurring.

I join the majority opinion in full, but with respect to Division 5, I note my continued belief that Gibson v. State, 288 Ga. 617 (706 SE2d 412) (2011), was

wrongly decided. See id. at 620 (Nahmias, J., dissenting). The Court today continues its steady effort to obliterate Gibson by distinction. See Mitchell v. State, 293 Ga. 1, 3-4 (742 SE2d 454) (2013); State v. Clements, 289 Ga. 640, 648-649 (715 SE2d 59) (2011). As long as Gibson survives, however, it will continue to be a basis for enumerating error. It would be better to complete the obliteration process by simply overruling Gibson. See Mitchell, 293 Ga. at 5-6 (Nahmias, J., concurring); Clements, 289 Ga. at 650 (Nahmias, J., concurring specially in part).

I am authorized to state that Justice Blackwell joins in this concurrence.

Decided January 20, 2015.

Murder. Fulton Superior Court. Before Judge Baxter.

Thonas S. Robinson III, for appellant.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Arthur C. Walton, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smirh, Senior Assistant Attorney General, Clint C. Malcolm, Assistant Attorney General, for appellee.