**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 24, 2015**

# In the Court of Appeals of Georgia

A14A1893. DORSEY v. THE STATE.

MCFADDEN, Judge.

Markell Dorsey and four co-defendants were tried jointly before a jury for murder and other offenses related to the shooting death of Ron Strozier. After the trial, Dorsey was convicted of voluntary manslaughter, conspiracy to commit aggravated assault, conspiracy to commit criminal damage to property, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a felony and theft by receiving stolen property. Dorsey appeals, challenging the sufficiency of the evidence, the sentencing on both conspiracy counts, the denial of a motion to sever, the denial of a mistrial after impermissible character testimony, and the effectiveness of his trial counsel. However, there was sufficient evidence to support the verdict; any error in sentencing on the conspiracy counts was harmless;

there was no abuse of discretion in the denial of a severance; the trial court properly struck the improper character testimony and gave a curative jury instruction, rather than granting a mistrial; and there has been no showing that trial counsel's performance was both deficient and prejudicial. Accordingly, we affirm.

1. *Sufficiency of the evidence.*

Dorsey argues that there was insufficient evidence to support his voluntary manslaughter conviction because the state did not prove that any of the co-defendants shot Strozier. However, in a separate appeal, the Georgia Supreme Court found sufficient evidence to affirm the convictions of co-defendant Michael Grissom, noting that "[t]he relevant events arose out of a feud between Grissom's friend and co-defendant Markell Dorsey, and Dorsey's associates, on the one side, and an individual known only as 'D-Bone,' and D-Bone's associates, on the other." *Grissom v. State*, ___ Ga. ___ (Case No. S14A1431, decided January 20, 2015). Pursuant to *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the Court determined that the evidence, viewed in the light most favorable to the verdicts, showed the following facts.

> [T]he feud commenced with a physical altercation on July 31, 2005, between Dorsey and D-Bone[, identified at trial by the name Darian Jackson, ] over comments D-Bone made about a man referred to

2

as "Tay-Tay." Evidence was presented that Tay-Tay's real name was Dontavious Pettway. In the initial altercation, Dorsey was roundly beaten and, in order to exact revenge, Dorsey and co-defendant Rico Sims traveled from the Chastain West apartment complex where they were staying to an apartment complex located next door, known as Buckingham Court, where D-Bone lived. Dorsey challenged D-Bone and his associates to another fight. Sims was wearing a bullet-proof vest and wielding an assault rifle. During this exchange, D-Bone and others, including Ron Strozier, disarmed Sims and took his weapon and vest. Later that day, D-Bone was overheard talking on the phone to someone who told D-Bone "y'all better tool up."

The following day, August 1, Grissom, Dorsey, and Sims were at the Chastain West home of a friend where Grissom told William Edwards he planned on shooting up D-Bone's car. A wooded vacant parcel of land separated the Chastain West complex from the Buckingham Court complex, and testimony established that trails ran through the woods and that the woods were known to be a place where drugs were sold and used. Later that evening, Grissom was seen leaving the woods moments after a loud shot rang out that sounded like a shotgun blast. In statements to police, Grissom and several of his co-defendants[, including Dorsey,] admitted they were in the woods around the time of the shotgun blast, but denied they were involved. Strozier's body was located in the woods the morning of August 2. An autopsy determined he had died from wounds to his neck and torso caused by buckshot from a shotgun blast, and the testimony established that the window of time for Strozier's death encompassed the time at which the shot was heard. A shotgun was recovered during the investigation of these events, and Grissom admitted to police that he had been in possession of the shotgun and stated he obtained it from his cousin Dontavious Pettway, but Grissom denied he had used it. Edwards, who had known Grissom for several years at the time of the shooting and was familiar with his voice, overheard Grissom on the phone with Sims the day after Strozier was shot to death, telling Sims he had "shot someone in the head."

About an hour after the shotgun blast was heard, Grissom, armed with a .357 magnum handgun, traveled to Buckingham Court with Dorsey, Sims, and others in two separate cars, both of which had been stolen. A shootout between the two rival groups ensued, and Grissom admitted in his statement to police that he fired at least two shots from his handgun during this exchange. Grissom also admitted that after the car in which he was riding crashed into a fire hydrant he dropped his handgun and fled the scene. Law enforcement later recovered the gun inside the crashed car. Christina Green, an eyewitness to the shootout, heard multiple gunshots and saw three or four individuals fleeing through the woods. Green ran across the street to avoid the gunfire.

*Grissom*, supra at ___ .

In addition to the foregoing, the evidence showed that Dorsey was present when the plan to retaliate against D-Bone was made, that he was present when there were discussions about seeking out Strozier, that he admitted entering the woods on the night in question for the purpose of shooting at D-Bone and his truck, that he was in the woods with Grissom and others when Strozier was shot, that he fled from the scene of the shooting, and that he later abandoned the stolen car with the suspected murder weapon in it.

In arguing that the state failed to prove that any of the co-defendants shot Strozier, Dorsey points to inconsistencies in the evidence. But as the Supreme Court explained, "[r]esolving evidentiary conflicts and inconsistencies and assessing witness credibility are the province of the fact finder, not the appellate court."

4

*Grissom*, supra at ___ (1) (citation and punctuation omitted). In this case, "the evidence presented at trial, as summarized above, was sufficient to support the verdict." Id.

2. *Sentences on conspiracy counts.*

Citing *Braverman v. United States*, 317 U. S. 49 (63 SCt 99, 87 LE 23) (1942), Dorsey contends that the trial court erred in sentencing him separately on the two conspiracy counts because the evidence only showed a single conspiracy. Indeed, "[u]nder principles enunciated in *Braverman*[, supra at 53], whether the object of a single agreement is to commit one or many crimes, it is in either case the agreement that constitutes the conspiracy, and if there is only one agreement there can be only one conspiracy. [Cit.]" *Price v. State*, 247 Ga. 58, 60 (273 SE2d 854) (1981). The state counters that the evidence showed that there were two separate agreements, not just one, and thus *Braverman* is inapplicable. However, we need not resolve that issue because even if we assume error in the sentencing of Dorsey on both conspiracy counts, the error was harmless.

Our Supreme Court has adopted the rule of "cases exemplified by *Stephens v. United States*, 347 F2d 722 (5th Cir. 1965) (4) [which] hold that an improper conviction on multiple counts of a conspiracy indictment is harmless error where the

5

defendant's sentence is within legal limits for conviction of a single conspiracy." *Price*, supra at 61, n. 5. Here, the trial court imposed a total sentence of ten years for the two conspiracy offenses, sentencing Dorsey to serve five years for conspiracy to commit aggravated assault with a deadly weapon and another five years for conspiracy to commit criminal damage to property in the first degree.

That sentence was within the legal limits for conviction of a single conspiracy. "A person convicted of the offense of criminal conspiracy to commit a felony shall be punished by imprisonment for not less than one year nor more than one-half the maximum period of time for which he could have been sentenced if he had been convicted of the crime conspired to have been committed." OCGA § 16-4-8. The maximum period of time for which Dorsey could have been sentenced if he had been convicted of the aggravated assault that was the underlying subject of one of the conspiracy counts is 20 years. See former OCGA § 16-5-21 (b)[1] (person convicted of aggravated assault shall be punished by imprisonment for not less than one nor more than 20 years). Thus, the maximum sentence for conspiracy to commit aggravated assault is one-half of that 20 years, or ten years. Because the total sentence imposed

_____

[1] This provision, in effect when Dorsey was tried, is now codified at OCGA § 16-5-21 (c).

6

for both conspiracy offenses was ten years, the sentence was within the legal limits for a person convicted of a single conspiracy to commit aggravated assault, and therefore any error in sentencing Dorsey for both conspiracy charges was harmless. *Price*, supra.

3. *Motion to sever.*

Dorsey claims that the trial court erred in failing to sever his trial from that of Grissom because they presented antagonistic defenses and he was unable to fully present his statement to police which implicated Grissom as the shooter. The claim is without merit.

"In a capital case in which the death penalty is not sought, a trial court's decision not to sever the trials of co-indictees is reviewed for abuse of discretion, and the movant must make a clear showing that the joint trial was prejudicial and resulted in a denial of due process. The existence of antagonistic defenses alone is insufficient to require the severance of a joint trial." *Barge v. State*, 294 Ga. 567, 570 (3) (755 SE2d 166) (2014) (citations and punctuation omitted).

While Dorsey claims he and Grissom presented antagonistic defenses, the trial court ruled otherwise. The trial judge noted that she had reviewed all of the co-defendants' statements thoroughly and found no showing of antagonistic defenses.

7

Indeed, at trial, Dorsey did not present a defense implicating Grissom or any of the other co-defendants, and instead asserted a defense that Strozier was a drug dealer and that several other individuals, including known drug users, could have committed the shooting.

Although Dorsey asserts in his brief that the redacted parts of his statement implicated Grissom as the shooter, he has not cited any portion of the record showing the exact statements that were redacted or any proffer of such evidence. Nevertheless, even if we assume that the redacted statements did implicate Grissom, such evidence would have merely been cumulative of other evidence in the record showing that Grissom was the shooter. Had Dorsey wanted to pursue a defense antagonistic to Grissom, we fail to see how he was precluded from doing so based on the evidence in the record. Moreover, the evidence against Dorsey implicated him as a party to the shooting committed by Grissom, so we fail to see how a defense by Dorsey implicating Grissom as the shooter would have benefitted him. Indeed, Dorsey's trial counsel argued to the jury that the state was required, but had failed, to prove that one of the co-defendants intentionally killed Strozier and that Dorsey was a party to that crime. Under these circumstances, Dorsey has failed to carry his burden of making a clear showing that the joint trial was prejudicial and a denial of due process. *Barge*,

supra. Consequently, we conclude that "the trial court did not abuse its discretion in denying [Dorsey's] motion to sever." *Jones v. State*, 277 Ga. App. 185, 188 (626 SE2d 185) (2006) (citation omitted).

4. *Motion for a mistrial.*

Dorsey complains that the trial court erred in denying his motion for a mistrial after a state's witness gave impermissible character testimony by mentioning Dorsey's involvement with drugs. We disagree.

While being questioned by attorneys for two of the co-defendants, the witness testified that Dorsey was good friends with an individual named Keyontae Mitchell, that Dorsey would do whatever Mitchell told him to do, and that she believed this about Dorsey because of things she had seen and heard. The prosecuting attorney followed up on this line of questioning by asking the witness what things she had seen and heard to make her believe this about Dorsey, and the witness responded: "We in the house one day. I guess whatever happened, whatever, whatever, I ain't fixing to get into it. They got some drugs somewhere. He told them to go sell it." Dorsey's attorney immediately objected and moved for a mistrial. The trial court denied a mistrial, but sustained the objection, struck the testimony and instructed the jury not to consider it.

9

"Whether to declare a mistrial is a question committed to the discretion of the trial judge, and the denial of a mistrial is reversible error only if it appears that a mistrial was essential to preserve the defendant's right to a fair trial." *McKibbins v. State*, 293 Ga. 843, 848 (3) (750 SE2d 314) (2013) (citation and punctuation omitted). Here, Dorsey has made no showing that a mistrial was essential to preserve his right to a fair trial. On the contrary, the trial court preserved that right by taking immediate corrective action to strike the testimony and give a curative instruction to the jury. "Because the trial court acted immediately, ruled out the offensive testimony, and properly instructed the jury to disregard the statement, . . . we find no abuse of discretion in denying the motion for mistrial. [Cit.]" *McGee v. State*, 267 Ga. 560, 565 (3) (480 SE2d 577) (1997) (holding that improper character testimony did not necessitate a mistrial).

5. *Ineffective assistance of counsel.*

Dorsey claims his trial counsel was ineffective in failing to object to the state's alleged comment on his right not to testify and in requesting a jury instruction on prior consistent statements. To prevail on such claims, Dorsey must "show both that his counsel's performance was professionally deficient and that but for counsel's unprofessional conduct, there is a reasonable probability the outcome of the

10

proceedings would have been different." *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012) (citations and punctuation omitted). However, he has failed to make both showings.

a. *Failure to object to alleged comment on right to remain silent.*

During his closing argument, the prosecutor cited the testimony of a witness who had seen the incident when D-Bone and others confronted Dorsey and Sims and took a bulletproof vest and gun from them. The prosecutor then stated, "You don't hear Markell Dorsey or Rico Sims say that never happened. You don't hear Rico Sims and Markell Dorsey say that [witness] is a liar, I was never near Washington Road on that day. Although that's what they initially said to the police when they were interviewed." Trial counsel did not object to this argument.

At the motion for new trial hearing, trial counsel testified that the reason she did not object to the argument was because she did not view it as a comment on the fact that Dorsey had not testified at trial, but instead believed it was proper argument based on the videotaped statement that Dorsey had given to police and which was in evidence, having been played for the jury. Dorsey has pointed to nothing that contradicts trial counsel's view of the argument, and in fact the prosecutor specifically referenced the statement given to police during that argument.

11

Given that Dorsey's statement was in evidence and that the state's argument expressly referred to it, we find that trial counsel's strategic decision not to raise what she viewed as a meritless objection was not deficient.

> A decision by trial counsel not to object to statements in closing argument may fall within the ambit of trial strategy, and in the absence of evidence to the contrary, trial counsel's actions are presumed to be strategic. Moreover, even assuming that trial counsel should have objected to the comment, [Dorsey] has not shown that but for counsel's failure to object [to this isolated comment], there was a reasonable probability that he would not have been convicted.

*Sweet v. State*, 278 Ga. 320, 325-326 (8) (602 SE2d 603 (2004) (citations omitted). Thus, this claim of ineffectiveness of trial counsel fails. Compare *Cheeks v. State*, 325 Ga. App. 367 (750 SE2d 753) (2013) (trial counsel ineffective in failing to object to state's egregious and repeated questions and comments on defendant's silence as evidence of guilt).

b. *Request to charge on prior consistent statements*.

Citing *Stephens v. State*, 289 Ga. 758, 759 (1) (a) (716 SE2d 154) (2011), in which the Georgia Supreme Court held that "an instruction on prior consistent statements should no longer be given except where the circumstances of an unusual case suggest that the jury may have the mistaken impression that it cannot consider a prior consistent statement as substantive evidence," Dorsey argues that trial counsel

12

was ineffective in requesting such a charge. However, the trial in this case was held in 2006, long before the *Stephens* decision and at a time when the pattern jury instructions included a charge on prior consistent statements. Id. at 758-759 (1) (a). Thus, the holding in *Stephens* is inapposite.

Nevertheless, the actual charge requested in this case did not follow the pattern charge of the time, which referred to a witness having given a statement before trial consistent with that witness' own trial testimony. Id. The requested charge in this case did not refer to such a single witness, but instead referred to the trial testimony of one witness being consistent with that of *another* witness. However, even assuming that trial counsel's request of such a charge was deficient, Dorsey has not shown a reasonable probability that the outcome of the trial would have been different but for that deficiency. "Based upon the strength of the evidence presented against [Dorsey,] we conclude that [he] cannot meet his burden of demonstrating prejudice from counsel's request for an erroneous charge." *Bellamy v. State*, 312 Ga. App. 899, 903 (3) (a) (720 SE2d 323) (2011) (finding no ineffective assistance where counsel requested jury charge on prior consistent statements).

*Judgment affirmed. Andrews, P. J., and Ray, J., concur.*