NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the
# Supreme Court of Georgia

No. S26A0173
Casey Battle
v.
The State

On Appeal from the Superior Court of Fulton County
No. 16SC148013

Decided: June 16, 2026

COLVIN, Justice.

Appellant Casey Battle appeals his convictions for felony murder and other crimes related to an armed robbery in which Jerome Blake and Nathon Hannon were shot and killed.[1] On appeal, Battle contends that his trial counsel rendered ineffective

---

[1] The crimes occurred on April 20, 2016. On December 2, 2016, a Fulton County grand jury returned a 14-count indictment charging Battle, Sheldon Dooley, and Kenson Hunte with the malice murder of Blake (Count 1), three counts of felony murder with respect to Blake's death (Counts 2, 4, and 6), three counts of felony murder with respect to Hannon's death (Counts 3, 5, and 7), criminal attempt to commit armed robbery against Blake (Count 8), criminal attempt to commit armed robbery against Caleb Sims (Count 9), aggravated assault against Blake (Count 10), aggravated assault against Sims (Count 11), aggravated assault against Mark Flournoy (Count 12), and burglary in the second degree (Count 13). The indictment also charged Battle and Dooley — but not Hunte — with possession of a firearm during the commission of a felony (Count 14).

Prior to trial, the State severed Hunte's case from his co-defendants' cases for the purpose of trial. Battle and Dooley's trial started on December 10,

assistance by failing to request certain jury instructions and that the trial court abused its discretion by denying Battle's motion for mistrial. As explained below, these claims fail, and we accordingly affirm Battle's convictions.

---

2018, but Dooley's case was severed mid-trial. Battle's trial concluded on December 19, 2018, with the jury finding him guilty on all counts except malice murder.

The trial court sentenced Battle to two concurrent terms of life in prison for the felony murders of Blake (Count 2) and Hannon (Count 3). The court further sentenced Battle to concurrent terms of 10 years in prison for criminal attempt to commit armed robbery against Sims (Count 9), 10 years in prison for the aggravated assault of Sims (Count 11) and 10 years in prison for the aggravated assault of Flournoy (Count 12). Battle also received a consecutive sentence of 5 years in prison for possession of a firearm during the commission of a felony (Count 14). The remaining counts (Counts 4–8, Count 10, and Count 13) were merged or vacated by operation of law as follows. The trial court merged Battle's charge for criminal attempt to commit armed robbery against Blake (Count 8) into the felony murder convictions charged in Counts 2 and 3, which were both predicated on Count 8. The trial court vacated Battle's remaining charges for felony murder (Counts 4–7) by operation of law. And lastly, the trial court merged Battle's charges for aggravated assault against Blake (Count 10) and burglary in the second degree (Count 13) into the felony murders charged in Counts 4–7. But because Counts 4–7 had been vacated by operation of law, the trial court could not have merged Counts 10 and 13 in this way; it was instead required to determine whether Counts 10 and 13 merged into Battle's other charges, and, if not, to sentence him on Counts 10 and 13. See *Grissom v. State*, 296 Ga. 406, 410 (2015). We decline to correct these errors on appeal as an exercise of our discretion, however, because the errors benefited the defendant. See *Dixon v. State*, 302 Ga. 691, 697–98 (2017).

Battle did not initially move for new trial or file a timely notice of appeal. But following the grant of his petition for a writ of habeas corpus, Battle was permitted to file a motion for an out-of-time appeal, which the trial court granted. Battle then timely filed a motion for new trial, which he later amended. On January 17, 2025, the trial court denied Battle's motion by written order. Battle filed a notice of appeal on the same day. His case was docketed to the term of court beginning in December 2025 and submitted for a decision on the briefs.

2

1. The evidence showed the following. Prior to the robbery that led to Blake's and Hannon's deaths, Casey Sims and others stole a gold chain and tens of thousands of dollars in cash from Kenson Hunte, a rapper who performed under the name Rich Show. Sims then taunted Hunte on social media by posting pictures of Hunte's chain and statements disrespectful to Hunte.

When Battle, who was himself an aspiring rapper, learned of the conflict between Hunte and Sims, he messaged Hunte on Instagram, telling Hunte that he could "get" Hunte "the n***a who say he ran off with 300,000." Hunte responded and connected Battle with an associate later identified as Michael Kendall.

Separately, Battle contacted Sims. Like Hunte and Battle, Sims was a rapper. Battle messaged Sims, offering Sims money to record a song together, and Sims agreed.

On April 20, 2026, Sims drove Battle to a recording studio in Fulton County. There, Sims and Battle recorded music alongside Blake and Mark Flournoy. But unbeknown to Sims, Blake, and Flournoy, Battle was in communication throughout the session with Hunte's associate, Kendall.

At about 8:10 p.m., Battle stepped outside the studio, where he met with three of Hunte and Kendall's associates: Hannon, Sheldon Dooley, and a third unidentified man wearing a burgundy sweatshirt. Battle then led this group inside the studio, where they attempted to rob those inside at gunpoint. Flournoy heard one of the men say, "Give it up. Give it up." And Battle himself told detectives that he heard one or more of the men say, "Y'all give it up, lay it down, lay it down" and "Y'all n***as know what you did. You try to rob everybody."

Sims was prepared for this situation, however. He had with him both an AK-47 style rifle and an AR-15 style rifle with him

3

at the studio, and a gunfight ensued that left both Blake and Hannon dead. Battle, Dooley, and the man in the burgundy sweatshirt fled the room at a sprint, but Battle stayed on the premises until police arrived. Sims and Flournoy also remained and were detained by police.

At trial, Battle told jurors that an associate of Hunte's approached him in a black Audi SUV a week or two before the shooting, when Battle was out with his young son. Battle testified that this person, who was armed, coerced him into helping Hunte find and set up Sims. Battle further testified that he thought the plan was simply for the men to "discuss" with Sims the possibility of "returning the chain" to Hunte. Battle claimed not to know that the men would bring firearms or that they were planning to rob Sims.

2. In his first enumeration of error, Battle argues that his trial counsel was constitutionally ineffective because his counsel failed to request jury instructions on the affirmative defenses of claim of right and justification. As explained below, these claims fail.

(a) We begin with the law applicable to ineffective-assistance claims. As we have explained, "[t]o prevail on an ineffective-assistance-of-counsel claim, a defendant must show deficient performance by trial counsel and resulting prejudice." *Zayas v. State*, 319 Ga. 402, 409 (2024) (citing *Strickland v. Washington*, 466 US 668, 687 (1984)). To establish that his trial counsel performed deficiently, "a defendant must demonstrate that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Rosenau v. State*, 321 Ga. 299, 307 (2025). "The law recognizes a strong presumption that counsel performed reasonably,

and the defendant bears the burden of overcoming this presumption." Id. (quotation marks and citation omitted). Overcoming this presumption requires "a defendant [to] show that no reasonable lawyer would have done what his lawyer did[ ] or would have failed to do what his lawyer did not." Id. "To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different." *Cooper v. State*, 321 Ga. 349, 351 (2025) (quotation marks and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Sims v. State*, 321 Ga. 627, 634 (2025) (quoting *Strickland*, 466 US at 694). Because an appellant must establish both his counsel's deficient performance and prejudice resulting therefrom, "[i]f a defendant fails to establish either deficient performance or prejudice, we need not address the other part of the *Strickland* test." *Cooper*, 321 Ga. at 351–52.

(b) Battle first contends that his trial counsel was ineffective for failing to request a jury instruction on the affirmative defense of claim of right, as provided in OCGA § 16-8-10. Speaking generally, that Code Section provides an affirmative defense to certain theft-related offenses where the person prosecuted acted "under an honest claim" that he owned the property allegedly stolen. OCGA § 16-8-10(2). As relevant here, the statute states that "[i]t is an affirmative defense to a prosecution for violation of Code Sections 16-8-2 through 16-8-9 that the person: ... [a]cted under an honest claim of right to the property ... involved[.]" Though a review of the Criminal Code shows that armed robbery and burglary are not among the offenses defined in Code Sections 16-8-2 through 16-8-9,[2] Battle nevertheless contends that a claim-of-

_____

[2] See OCGA §§ 16-8-2 (theft by taking); 16-8-3 (theft by deception);

5

right defense was available to him with respect to his charges for criminal attempt to commit armed robbery (Counts 8 and 9) and burglary in the second degree (Count 13)[3] because OCGA § 16-8-10 provides a defense to theft related charges, and armed robbery and burglary each include as an element the intent to commit a theft. OCGA § 16-8-41(a) ("A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon[.]"); OCGA § 16-7-1(c) ("A person commits the offense of burglary in the second degree when, without authority and with the intent to commit a felony or theft therein, he or she enters ... an occupied ... building[.]").

Battle recognizes that his interpretation of OCGA § 16-8-10 directly conflicts with a line of cases from the Court of Appeals, but he argues that such cases are not binding on this Court, and he asks us to overturn them.[4] We see no reason to overturn these

---

16-8-4 (theft by conversion); 16-8-5 (theft of services); 16-8-5.1 (avoiding payment due to rental or lease or personal property); 16-8-5.2 (retail property fencing); 16-8-6 (theft of lost or mislaid property); 16-8-7 (theft by receiving stolen property); 16-8-8 (theft by receiving property stolen in another state); 16-8-9 (theft by bringing stolen property into this state).

[3] Battle also contends that this defense was available to him with respect to his charges predicated on those felonies, which included felony murder (as charged in Counts 2–3 and 6–7) and possession of a firearm during the commission of a felony (Count 14).

[4] See *Crowder v. State*, 241 Ga. App. 818, 820 (2000) ("Crowder was not entitled to a charge on 'claim of right,' since by statute such charge is a defense to the crime of theft, not armed robbery. While we agree with Crowder that '*intent* to commit a theft' is an essential element of armed robbery, we decline to judicially extend the defense of 'claim of right' to mitigate this essen-

cases for the reasons that Battle posits, which are untethered to the text of the statute, and in any event, Battle's request comes to us in the context of his ineffective assistance claim. By acknowledging that adopting his interpretation of OCGA § 16-8-10 would require us to overturn Court of Appeals decisions that were binding on the trial court at the time of his trial, Battle implicitly acknowledges that his claim involves faulting his counsel for failing to request a jury charge the trial court could not have given. And trial counsel could not have been deficient for failing to request such a charge or for failing to request a change in the law. See *Graham v. State*, 323 Ga. 496, 501 (2026) (holding that defense counsel's performance was not deficient for failing to request a jury charge on an affirmative defense that would have

---

tial element when the uncontradicted evidence shows a completed armed robbery. To do so would be to find that an alleged 'claim of right' justifies the use of a gun or other weapon to secure that claim. In such an instance, the ends do not justify the means, regardless of whether the defendant thinks he has a right to the property. Presumably, that is why the legislature did not include 'claim of right' as a defense to armed robbery."); *Wideman v. State*, 222 Ga. App. 733, 733 (1996) (holding that the trial court did not err by failing to instruct the jury sua sponte on a claim-of-right defense where the defendant was charged with burglary). See also *Richards v. State*, 276 Ga. App. 384, 384–86 (2005) (holding that the trial court correctly refused to charge the jury regarding a claim-of-right defense because the defendant had been charged with robbery by intimidation and that offense was not among those enumerated in OCGA § 16-8-10 for which the defense was available); *Westmoreland v. State*, 245 Ga. App. 482, 484 (2000) (holding that the trial court correctly refused to charge the jury regarding the claim-of-right defense where the defendant was charged with robbery).

In this Court's only case interpreting OCGA § 16-8-10(2), we noted in dicta that the defense of claim of right does not apply to financial transaction card theft under OCGA § 16-9-31 because that crime is not among those listed in OCGA § 16-8-10(2). See *Rozier v. State*, 259 Ga. 399, 400 (1989). Though not directly applicable here, we note that the dicta in *Rozier* is consistent with the subsequent decisions of the Court of Appeals referenced above.

7

required an extension to existing law). Accordingly, this claim fails.

(c) Battle's argument that his counsel was ineffective for failing to request a charge on justification is contingent on the success of his claim-of-right argument. As Battle put it, "[i]f the jury found claim of right applied ... the remaining question was who initiated the deadly force." But because we held above that Battle's counsel was not deficient for failing to request an instruction on claim of right, it follows that counsel was also not deficient for failing to request a corresponding instruction on justification. Accordingly, this claim also fails.

3. In his final claim of error, Battle contends that the trial court abused its discretion by denying his motion for mistrial. Battle's claim is not preserved for our review, however.

(a) Initially, the State tried Battle together with his co-defendant, Dooley. But on the fifth day of trial, the trial court granted Dooley's motion to sever his trial from Battle's. Battle immediately moved for a mistrial, arguing that he had been irreparably prejudiced by evidence that had been admitted solely because of Dooley's presence at trial. The trial court denied Battle's motion, and a recess was taken so that Dooley could leave the courtroom.

As proceedings resumed, Battle asked the trial court to give a "special instruction to the jury" informing it of the reason Dooley was severed from trial and explaining that no inference, "good or bad," should be made against Battle. The trial judge replied that she would instruct the jury that the law required the judge to sever Dooley's case, that Battle's trial would continue, and that "no inference, harmful to Mr. Battle, in any way, shape or form should be drawn from the court severing the cases." Battle's counsel requested that the court further instruct the jurors

8

that the severance "came as a result of errors that were made by the State," but the trial judge declined to include this language. Battle did not object.

When the jury entered the courtroom, the trial court told the jury that it had severed Dooley's case, that Dooley's case would be heard at a later time; that it was the trial court's "decision that the law required a severance at this point," that the jury was "not to hold that against Mr. Battle in any way, shape or form," and that "the [S]tate still has the burden." The trial court concluded its remarks by reiterating that "no inference harmful to the defendant, Mr. Battle, should be drawn from the fact that [she] felt that the law required a severance at this point." Battle did not object to this instruction or renew his request for a mistrial.

(b) "To ensure appellate review of the denial of a motion for mistrial, a defendant generally must preserve the issue at trial." *Bates v. State*, 317 Ga. 809, 818 (2023). "[I]f the trial court … takes steps to cure the matter giving rise to the motion, like giving a curative instruction, the defendant has a choice: accept the curative instruction and move on, or object, renew the motion for mistrial, and obtain a definitive ruling on that motion." Id. "The denial of the mistrial motion is preserved for review only in the latter case—that is, by the renewal of the mistrial motion and a definitive ruling on that motion." Id. (citations omitted).

Because Battle did not object to the trial court's curative instruction or renew his motion for mistrial after the instruction was given, his claim is not preserved for our review. *Jackson v. State*, __ Ga. __ (2025), 2026 WL 1216085, slip op. at *12 (Ga. May 5, 2026); *Robinson v. State*, 927 SE2d 199, 200 (Ga. Mar. 3, 2026);

9

*Bates v. State*, 317 Ga. 809, 819 (2023).[5]

*Judgment affirmed. All the Justices concur.*

---

[5] Quoting *Horton v. State*, 310 Ga. 310 (2020), Battle contends that his trial counsel's challenge to the sufficiency of the trial court's proposed curative instruction *before* it issued was equivalent for preservation purposes to objecting to the instruction *after* it is given. But *Horton* does not stand for this proposition, as the Court did not even reach the issue of preservation in that case. See *Horton*, 310 Ga. at 317, n.8 ("Because we conclude that the trial court did not abuse its discretion in denying Horton's motion, we do not reach the question of whether he failed to preserve the issue.").