**FIFTH DIVISION**
**RICKMAN, C. J.,**
**MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 4, 2022**

# In the Court of Appeals of Georgia

A21A1760. TUCKER v. THE STATE.
A22A0023. TUCKER v. THE STATE.

Phipps, Senior Appellate Judge.

A jury found brothers Jarvis and Jason Tucker guilty of multiple counts of armed robbery, aggravated assault, conspiracy, and numerous related offenses. In Case No. A21A1760, Jarvis appeals from the denial of his motion for a new trial, arguing that: (i) the trial court plainly erred when it admitted several witnesses' out-of-court statements; (ii) his trial counsel rendered ineffective assistance by failing to object to those statements and by failing to move to sever some of the charges against him; (iii) the trial court erroneously admitted improper opinion testimony; and (iv) several of his convictions should merge. In Case No. A22A0023, Jason likewise appeals from the denial of his motion for a new trial, arguing that: (i) the trial court

committed plain error by failing to instruct the jury that one cannot conspire with a government agent; (ii) the trial court erred by denying his motion for a directed verdict on a charge of possession of a firearm during the commission of a felony; (iii) his trial and post-conviction counsel rendered ineffective assistance in connection with statute-of-limitation issues; and (iv) several of his convictions also should merge. For the reasons that follow, we agree that the trial court should have merged each appellant's two conspiracy convictions and also should have merged one of each appellant's aggravated assault convictions into one of the armed robbery convictions. We further conclude that the sentences imposed for two of each appellant's convictions are void. We therefore vacate the affected convictions and sentences and remand for the trial court to resentence both defendants. We discern no other reversible errors and otherwise affirm the trial court's judgments.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence. *Krauss v. State*, 263 Ga. App. 488, 488 (1) (588 SE2d 239) (2003). So viewed, the evidence shows that one of the victims, N. A., owned several fine jewelry stores in Atlanta, including one at Greenbriar Mall. Early one morning in September 2011, he parked in his home driveway and was exiting his car when a masked man

2

carrying a walkie-talkie put a shotgun to his head. Almost immediately, two other masked, armed men joined them. The men took N. A. inside his home, held him at gunpoint against a wall, removed his wallet and jewelry, including a "fake AP watch," and demanded more money and the location of a safe, although N. A.'s home did not have one. At some point, one of the men fired a gun so close to N. A.'s head that he felt the bullet pass through his hair.

When N. A.'s wife K. A. emerged from her upstairs bedroom, a masked man pointed a gun at her and ordered her downstairs. As she made her way down, the man pulled a necklace from her neck and demanded money, jewelry, and the location of a safe. K. A. retrieved a jewelry box from under a sink and gave it to the intruder, who then ordered her to kneel in a laundry room. In the interim, another intruder awoke the couple's then-teenage son, ordered him at gunpoint into the laundry room, and then retrieved the couple's then-three-year-old daughter from K. A.'s bedroom and brought her to the laundry room, as well.

The masked men ransacked the victims' home, searching for money and more jewelry. At some point, one of the intruders told another that "the ride is here," after which they bound the hands of N. A., K. A., and their son with duct tape and fled. Shortly thereafter, K. A. freed herself and summoned law enforcement. N. A., K. A.,

and their son all gave first-hand accounts of the home invasion during the Tuckers' trial.

Two of the participants in the robbery — Lamon Jackson and Darden Walker — testified at trial that Jarvis was the driver for the robbery and that Jason also participated in the robbery. According to Jackson, Jarvis primarily stayed in the getaway car while the three others entered the victims' home, although Jarvis also entered the home at some point. Once inside the home, Jackson — who was armed with a revolver — held N. A. at gunpoint while Jason and Walker — who was armed with a shotgun — went upstairs. Jackson testified that he fired the gunshot that nearly grazed N. A.'s head. After binding N. A., K. A., and their son with duct tape, the men left with money and jewelry, which they later divided among themselves. Walker testified that Jarvis also gave him the proceeds from the sale of some of the stolen jewelry at some point after the robbery.

Steven Thompson testified that he recruited Jarvis, Jason, Jackson, and Walker to rob N. A.'s home, although Thompson did not directly participate in the robbery itself. Before the robbery, Thompson, Jarvis, and Jason attached a GPS tracking device to N. A.'s car to obtain his home address. Thompson and Jason then monitored the car's movements remotely. Thompson, the Tucker brothers, and Walker thereafter

4

conducted surveillance on N. A.'s home to determine the best way to gain entry. Thompson and Jarvis retrieved the GPS tracker at some point before the robbery.

Norris Owens testified that he helped Thompson plan the September 2011 home invasion by obtaining the GPS tracking device that was used to obtain N. A.'s home address. On the day the tracker was placed on N. A.'s car, Owens met the Tucker brothers and Thompson across the street from Greenbriar Mall, where one of N. A.'s jewelry stores was located.

Shortly after the robbery, Owens learned that Jarvis and Thompson had an "AP" watch for sale; Owens offered to sell it to a club owner in South Carolina by the name of Edwin Francisco. When Owens drove to South Carolina to meet Francisco, the Tucker brothers followed him. And while Owens discussed the watch with Francisco, either Jarvis or Jason placed the same GPS tracking device that was used in the robbery of N. A.'s home on Francisco's car and later monitored Francisco's movements remotely.

When Francisco drove home the following day, he noticed a truck that appeared to be following him. As he exited his car, a man ran towards him from some bushes. Francisco immediately got back in his car, and, as he backed up, he saw three armed men, who got into the truck and fled. Francisco and Walker both testified that

the Tucker brothers were part of the armed crew that attempted to rob Francisco.[1] Law enforcement later obtained the GPS tracker used in both episodes, and data obtained from the device corroborated the testimony of Jackson, Walker, Thompson, and Owens.

After Owens was implicated in the 2011 home invasion, he agreed to cooperate with law enforcement and began recording phone calls with Jarvis and Jason; audio recordings of several such calls were admitted and played at trial. During the calls, Owens sought to recruit a crew to commit a fictitious robbery of another jeweler's family and planned that robbery with the Tucker brothers. Owens also recorded in-person conversations with Jarvis and Jason in which Jarvis played an active role in planning the fictitious robbery. During one of the recorded phone calls, Owens, an undercover law enforcement agent, and Jarvis discussed accosting one of the victims outside the home, and Jarvis agreed that the jeweler needed to be home to show the robbers where to find money and jewelry. Jarvis thereafter recruited Walker to take part in the robbery.

On the night of January 28, 2016, Owens and the undercover agent met the Tucker brothers and Walker at a café; they planned to leave from there to travel to the

---

[1] Thompson also implicated Jarvis in the attempt to rob Francisco.

6

fictitious robbery location, with Owens and the undercover agent in the agent's SUV, and the other three men in a separate sedan. The Tucker brothers and Walker — all of whom were wearing black — were arrested en route, shortly after their car broke off from following the SUV and after a brief motor vehicle chase. Two loaded guns were found in their car.

The jury found both Tucker brothers guilty of four counts each of false imprisonment and kidnapping, three counts of aggravated assault, two counts of armed robbery, and one count each of conspiracy to commit armed robbery, conspiracy to commit burglary, burglary, first-degree cruelty to children, and possession of a firearm or knife during the commission of a felony.[2] Both men filed motions for a new trial, which the trial court denied, and these appeals followed.

*Case No. A21A1760*

1. At trial, FBI Special Agent Jamie Hipkiss testified that he interviewed Thompson in August 2015. Hipkiss relayed several statements made by Thompson

---

[2] By statute, "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime," and a person is "concerned in the commission of a crime" if he "[d]irectly commits the crime" or "[i]ntentionally aids or abets in the commission of the crime." OCGA § 16-2-20 (a), (b) (1), (3). The Tucker brothers' convictions were premised on the 2011 home invasion and 2016 conspiracy — they were not charged in this proceeding with any crimes arising out of the attempt to rob Francisco.

during that interview concerning the planning and execution of the September 2011 home invasion. As Hipkiss began to recount Thompson's statements about the robbery itself, Jason's counsel objected to the line of questioning on hearsay grounds. The State responded that the testimony was proper as co-conspirators' statements in furtherance of a conspiracy and as prior consistent statements, as the defendants had tried to impeach Thompson with the benefits he expected to receive in exchange for his cooperation. The trial court overruled Jason's objection, and Hipkiss relayed Thompson's statements about how the robbery of N. A.'s family and the attempted robbery of Francisco unfolded, which were consistent with the evidence discussed above. Hipkiss also provided testimony regarding statements made to him by Owens about the planning of the 2011 home invasion and attempted robbery of Francisco, and by Francisco about the attempt to rob him. Jarvis's counsel did not raise any hearsay objections to this testimony.

Jarvis contends on appeal that the trial court committed plain error when it admitted Hipkiss's testimony regarding out-of-court statements made by Thompson, Owens, and Francisco. According to Jarvis, the challenged testimony was hearsay, did not qualify for admission as prior consistent statements, and instead improperly

bolstered Thompson's, Owens's, and Francisco's testimony. For the reasons that follow, Jarvis has not met his burden of establishing plain error.

We generally review a trial court's evidentiary rulings for abuse of discretion. *McCoy v. State*, 332 Ga. App. 626, 628 (774 SE2d 179) (2015). "However, where, as here, a defendant has not timely objected to the evidence [before the trial court], we review for plain error."[3] *Carmichael v. State*, 353 Ga. App. 64, 70 (2) (836 SE2d 184) (2019) (citation and punctuation omitted); see also OCGA § 24-1-103 (d) (a court may take notice of "plain errors affecting substantial rights" concerning evidentiary rulings even absent a contemporaneous objection). "To establish plain error, [an a]ppellant must identify an error that was not affirmatively waived, was clear and not open to reasonable dispute, likely affected the outcome of the proceeding, and seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Thompson v. State*, 304 Ga. 146, 151 (6) (816 SE2d 646) (2018); accord *Roberts v. State*, 305 Ga. 257, 263 (4) (824 SE2d 326) (2019). "Satisfying all four prongs of this

[3] As Jarvis implicitly concedes by framing this claim under plain error review, because his counsel did not join Jason's counsel's objection to Hipkiss's testimony, Jarvis did not preserve any such objection on his own behalf. See *Stephens v. State*, 307 Ga. 731, 735 (1) (b) (838 SE2d 275) (2020) ("[A]n objection raised by a co-defendant does not preserve the contested issue for another co-defendant unless that co-defendant expressly adopts or joins in the objection."); accord *Maxwell v. State*, 267 Ga. App. 227, 229 (3) (599 SE2d 228) (2004).

standard is difficult, as it should be." *McGarity v. State*, 311 Ga. 158, 162-163 (2) (856 SE2d 241) (2021) (citation and punctuation omitted).

Here, pretermitting whether Hipkiss's challenged testimony was improperly admitted, Jarvis has not met his burden of showing that the testimony likely affected the outcome of his trial. Notably, Jarvis's claims of bolstering do not implicate the testimony of Jackson and Darden, both of whom gave the jury first-hand accounts of their participation in the 2011 home invasion with Jarvis and Jason that were substantially corroborated by the victims' testimony and data obtained from the GPS tracker. The testimony by Hipkiss alleged to be improper, on the other hand, was largely limited to background information concerning the planning stages of the 2011 home invasion (including the placement of the GPS tracker on N. A.'s car) and its aftermath (including attempts to sell the AP watch and rob Francisco). While that testimony gave context to the charged crimes, it did not appreciably add to the other strong evidence of Jarvis's guilt. And although Hipkiss also relayed some of Thompson's statements regarding various details concerning the actual commission of the 2011 robbery, that testimony was largely — if not entirely — cumulative of the testimony of Jackson, Darden, and the victims. Moreover, Hipkiss's testimony as to statements made by Francisco — regarding the robbery attempt on him and the

10

discovery of the GPS tracker on his car — also concerned events that were collateral to the crimes charged in this case.

All in all, Hipkiss's testimony concerning statements made to him by Thompson, Owens, and Francisco was cumulative of other unchallenged evidence, collateral to the charged crimes, or both. And when viewed in context with the totality of the evidence, there is no likelihood that Hipkiss's challenged testimony — regardless of whether any of it was improperly admitted — affected the outcome of Jarvis's trial, which is fatal to his plain-error claim.[4] See *Roberts*, 305 Ga. at 263 (4);

---

[4] We reject Jarvis's contention that, in deciding whether he has established plain error, we must disregard the testimony alleged to have been improperly bolstered. That standard applies only when deciding whether an objected-to evidentiary error implicating bolstering was harmless — an issue on which the State bears the burden — but plays no part in the plain-error analysis, in which the defendant bears the burden of showing that the alleged error likely affected the outcome of the proceedings. See *Bozzie v. State*, 302 Ga. 704, 708 (2) (a) (808 SE2d 671) (2017) (while "[t]he test for nonconstitutional harmless error is similar to the determination of prejudice under plain error review," under harmless-error review, "the *State* has the burden to show that it was *highly probable* that the error did *not* contribute to the verdict," whereas, "to establish plain error, a *defendant* has the burden of making an affirmative showing that the error *probably did* affect the outcome below") (emphases supplied; citations and punctuation omitted); compare *McGarity*, 311 Ga. at 167 (3) (to determine whether the improper admission of bolstering evidence was harmless, a court must determine "whether it is highly probable that the error did not contribute" to the verdict "without reliance on the testimony that was improperly bolstered"). Regardless, the outcome would be the same here, even if we were to exclude Thompson's, Owens's, and Francisco's testimony from our analysis, given the other strong evidence of Jarvis's guilt

11

*Thompson*, 304 Ga. at 151 (6); see also *Mosley v. State*, 298 Ga. 849, 852-853 (2) (b) (785 SE2d 297) (2016) (because an investigator's testimony describing another witness's out-of-court statements was merely cumulative of other properly admitted evidence, the investigator's testimony did not likely affect the outcome of the trial, and its admission thus was not plain error); *Fraser v. State*, 329 Ga. App. 1, 2 (763 SE2d 359) (2014) (it was not plain error to admit an officer's testimony relaying the battery victim's out-of-court statements about a prior violent act by the defendant, as the testimony was merely cumulative of the victim's own testimony in that regard and thus did not likely affect the outcome of the trial).

Moreover, Jarvis also has not met his burden of satisfying the final step of the plain-error analysis — showing that the alleged error "seriously affected the fairness, integrity, or public reputation of judicial proceedings" — as he elaborates no argument in that regard aside from a single, conclusory assertion that "this error seriously affected the fairness of the trial." See *McGarity*, 311 Ga. at 162 (2); *Thompson*, 304 Ga. at 151 (6); see also Court of Appeals Rule 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned."); *Brittain v. State*, 329 Ga. App. 689, 704 (4)

discussed above.

(a) (766 SE2d 106) (2014) ("[A]n appellant must support enumerations of error with argument and citation of authority, and mere conclusory statements are not the type of meaningful argument contemplated by our rules.") (citations and punctuation omitted). For each of the above reasons, this enumeration of error is without merit.

2. Jarvis argues that his trial counsel rendered ineffective assistance by failing to (a) object to certain testimony and (b) move to sever several of the charges against him. We disagree.

To establish ineffective assistance of counsel, one must show that counsel rendered deficient performance that prejudiced the defense. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984); *Seabolt v. Norris*, 298 Ga. 583, 584 (783 SE2d 913) (2016). Counsel's performance is deficient only if it falls below the wide range of competence demanded of attorneys in criminal cases. *Strickland*, 466 U. S. at 687-689 (III) (A). This requires a showing of errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. at 687 (III). Prejudice is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 694 (III) (B); *Seabolt*, 298 Ga. at 584-585. An ineffective-assistance claim is a mixed question of law and fact, and we accept the trial court's factual findings unless clearly

13

erroneous but independently apply the law to those facts.[5] *Hulett v. State*, 296 Ga. 49, 60 (5) (766 SE2d 1) (2014); see also *Strickland*, 466 U. S. at 698 (IV). The defendant bears the burden of proof on both prongs of an ineffective-assistance claim — if he fails to establish either prong, a reviewing court need not examine the other. See *Robinson v. State*, 298 Ga. 455, 463 (6) (782 SE2d 657) (2016).

(a) Jarvis first contends that his trial counsel rendered ineffective assistance by failing to object to Hipkiss's improper testimony regarding out-of-court statements by Thompson, Owens, and Francisco. For the reasons stated above in Division 1, Jarvis cannot establish a reasonable probability that, but for the admission of the challenged testimony, the result of his trial would have been different. See *Strickland*, 466 U. S. at 694 (III) (B); *Seabolt*, 298 Ga. at 584-585; see also *Jackson v. State*, 306 Ga. 69, 84 (4) (b) (829 SE2d 142) (2019) (prejudice under the plain-error standard is equivalent to prejudice for an ineffective-assistance claim); *Bozzie v. State*, 302 Ga. 704, 711 (4) (b) (808 SE2d 671) (2017) (same); *Wilson v. State*, 297 Ga. 86, 87-88 (2) (772 SE2d 689) (2015) (the defendant could not establish prejudice resulting from trial counsel's failure to object to the admission of a co-defendant's out-of-court

---

[5] The trial court implicitly rejected Jarvis's ineffective-assistance claim in its order denying his motion for a new trial.

14

statements, as those statements were merely cumulative of properly admitted testimony). Consequently, we need not decide whether Jarvis's trial counsel performed deficiently by failing to object to the testimony at trial. See *Robinson*, 298 Ga. at 463 (6).

(b) Jarvis also argues that his trial counsel was ineffective for failing to move to sever the 2011 home invasion charges from the 2016 conspiracy charges. Whether to file a motion to sever some charges from others, however, is a matter of strategy, and the failure to file such a motion does not require a finding that counsel was ineffective. See *Ross v. State*, 313 Ga. App. 695, 696 (1) (a) (722 SE2d 411) (2012); *Level v. State*, 273 Ga. App. 601, 606 (2) (a) (615 SE2d 640) (2005). And, importantly, the trial court here denied Jason's motion to sever the 2011 charges from the 2016 charges. Moreover, at the hearing on Jarvis's motion for a new trial, he presented no new evidence that would distinguish his request for a severance from Jason's. Under these circumstances, Jarvis's trial counsel cannot be deemed to have performed deficiently by failing to file a motion that, in all likelihood, would have been futile. See *Moon v. State*, 286 Ga. App. 360, 362-363 (2) (a) (649 SE2d 355) (2007) (concluding that the defendant did not show that his trial counsel rendered ineffective assistance by not moving to sever his trial from his co-defendants' trial

15

after the trial court denied one co-defendant's request for the same relief); see also *Clowers v. State*, 299 Ga. App. 576, 579 (2) (c) (683 SE2d 46) (2009) (rejecting a claim of ineffective assistance for failing to move to sever the defendant's trial from the co-defendant's trial because, inter alia, the defendant failed to show that the motion would have been granted). This claim therefore also is without merit.

3. At trial, FBI airplane pilot Richard Bell testified that, on January 28, 2016, he provided aerial surveillance for law enforcement by following a sedan, which itself was following a law enforcement SUV. As the sedan began to turn around, Bell "started calling it out" to officers on the ground; he testified that the maneuver was one that he "[saw] a lot from the air." When Bell was asked to give some context regarding "similar maneuvers" he had seen in other cases, Jarvis's counsel objected on the ground that the question called for speculation. Outside the presence of the jury, the State responded, "[The defense is] trying to leave the implication with this jury that their clients abandoned the operation when we all know they turned around to flee. And [Bell] can testify in other operations he's seen similar evasive maneuvers." The trial court overruled the objection, and the following exchange ensued:

16

[Bell:] If that vehicle comes to a stop for any reason, it gets — it gets my attention and I alert our ground crews. And if it starts going back the opposite way it came, I call out that it's going away, it's moving, and I've seen this many, many times, hundreds of times.

. . .

So I've seen evasive maneuvers my entire career, and it's my job to call them out.

[The State:] Did you call out that this was an evasive maneuver?

[Bell:] I did, because then obviously at that point they had separated, so something wasn't the norm.

During Bell's testimony, a recording of the video he obtained during the January 28 operation was admitted, and portions of it were played for the jury.

Jarvis contends that the above testimony was inadmissible because it was irrelevant and speculative and improperly usurped the role of the jury, which should have been free to make its own assessment of the aerial surveillance video. We discern no reversible error in its admission.

While we generally review evidentiary rulings for abuse of discretion, such rulings are subject to harmless-error review. See *Venturino v. State*, 306 Ga. 391, 393 (2) (830 SE2d 110) (2019); accord OCGA § 24-1-103 (a) ("Error shall not be

17

predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . .”). In determining whether an evidentiary error was harmless, “we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done so” to “assess whether it is highly probable that the error did not contribute to the verdict.” *Venturino*, 306 Ga. at 393 (2) (citation and punctuation omitted).

In the aerial surveillance video played for the jury, the sedan in which Jarvis and his accomplices were traveling can be seen turning around and attempting to depart after it followed the undercover agent's SUV behind a shopping center; several other vehicles then converged on the sedan. Pretermitting whether Bell's testimony that the sedan engaged in an “evasive maneuver” was improper, any potential error in its admission was harmless, as it was cumulative of other officers' testimony that the sedan “turned around” and engaged in “evasive” movements after its occupants “got spooked.”[6] See *Bridges v. State*, 293 Ga. App. 783, 784-785 (2) (668 SE2d 293)

---

[6] Jason's trial counsel objected after an FBI agent testified that the sedan's occupants “got spooked.” In response, the trial court instructed the jury to disregard the agent's subsequent statement that officers ultimately learned that the sedan turned around because its occupants saw SWAT vehicles behind the shopping center; neither the court nor defense counsel further directly addressed the mention of the word “spooked.”

18

(2008) (any potential error in a former 911 operator's testimony regarding the demeanor of 911 callers was harmless because it was cumulative of other testimony admitted without objection); *Jackson v. State*, 270 Ga. App. 166, 168-169 (2) (605 SE2d 876) (2004) (any potential error in two officers' opinion testimony that a toy gun used by the defendant looked real was harmless because it was cumulative of similar testimony by the victims and another officer).

Moreover, when asked during cross-examination whether he thought the occupants of the sedan "were leaving," Bell responded, "I'm not sure where they're going . . . ." And when asked, "[Y]ou have no idea what precipitated them turning, around; correct?" Bell responded, "No, sir." Under these circumstances, there is no likelihood that the challenged portions of Bell's testimony — when viewed in context with the remainder of his testimony and all of the other evidence presented — had any effect on the outcome of Jarvis's trial, regardless of whether it was properly admitted, and this enumeration of error therefore fails.

4. (a) Jarvis argues, and the State agrees, that the trial court erred by failing to merge his two conspiracy convictions. We also agree.

The merger doctrine precludes the imposition of multiple punishments for conduct that constitutes more than one crime. *McKenzie v. State*, 302 Ga. App. 538,

19

539 (1) (a) (691 SE2d 352) (2010); see also OCGA § 16-1-7 (a). "The key question in determining whether a merger has occurred is whether the different offenses are proven with the same facts. For example, if one crime is complete before the other takes place, the two crimes do not merge. However, if the same facts are used to prove the different offenses, the different crimes merge." *Bonner v. State*, 308 Ga. App. 827, 830 (2) (709 SE2d 358) (2011) (citation and punctuation omitted). Whether the object of a conspiracy is to commit one or many crimes, "it is in either case the agreement that constitutes the conspiracy, and if there is only one agreement there can be only one conspiracy." *Dorsey v. State*, 331 Ga. App. 486, 489 (2) (771 SE2d 167) (2015) (citation and punctuation omitted). We review the application of the merger doctrine de novo. See *Brown v. State*, 314 Ga. App. 198, 205 (6) (723 SE2d 520) (2012).

Jarvis was convicted of two counts of conspiracy arising out of his plan to commit the fictitious 2016 home invasion: conspiracy to commit armed robbery (Count 1) and conspiracy to commit burglary (Count 2). Because both convictions arose out of the same agreement, he could be convicted of and sentenced for only one count of conspiracy. See *Dorsey*, 331 Ga. App. at 489 (2); accord *Price v. State*, 247 Ga. 58, 60-61 (273 SE2d 854) (1981) (where, as here, a defendant is found guilty of

20

multiple violations of a single conspiracy statute based on evidence showing "only one conspiracy," the defendant can be convicted of only one offense of conspiracy); see also generally *Waldrip v. State*, 267 Ga. 739, 747 (10) (b) (482 SE2d 299) (1997) ("Evidence of a violation of a different statute does not create separate conspiracies, since the character and effect of a conspiracy are not to be judged by dismembering it and viewing separate parts but by looking at it as a whole."), abrogated in part on other grounds as recognized in *Archie v. State*, 248 Ga. App. 56, 57 (1) & n. 3 (545 SE2d 179) (2001).

Moreover, the trial court's error here was not harmless because the total sentence imposed for Jarvis's conspiracy convictions — twenty years (ten for each count) — exceeds the maximum for a single conspiracy conviction. See *Dorsey*, 331 Ga. App. at 489-490 (2). A conviction for conspiracy to commit a felony punishable by life imprisonment carries a maximum sentence of ten years, while a conviction for conspiracy to commit a felony punishable by a term of years carries a maximum sentence of "one-half the maximum period of time for which [the defendant] could have been sentenced if he had been convicted of the crime conspired to have been committed." OCGA § 16-4-8. The maximum sentence for burglary is 20 years, while

21

armed robbery is punishable by life in prison. OCGA §§ 16-7-1 (b); 16-8-41 (b).[7]

Consequently, Jarvis is subject to a maximum sentence of ten years for conspiracy, and his twenty-year total sentence for his two conspiracy convictions requires us to vacate his conspiracy conviction under Count 2 and remand the case to the trial court for resentencing. See *Dorsey*, 331 Ga. App. at 489-490 (2); see also generally *Sears v. State*, 292 Ga. 64, 73-74 (6) (734 SE2d 345) (2012) (vacating conviction that should have merged and remanding for resentencing).

(b) Finally, Jarvis contends that the trial court erred by failing to merge his convictions for the aggravated assaults with a firearm of N. A. and K. A. (Counts 13 and 14) into his convictions for the armed robberies of those victims (Counts 6 and 7). The State concedes that the convictions naming K. A. as a victim (Counts 7 and 14) should merge, but maintains that the convictions naming N. A. as a victim (Counts 6 and 13) should stand. We agree with the State.

---

[7]A maximum sentence of 25 years applies to a defendant's third and all subsequent convictions for first-degree burglary. OCGA § 16-7-1 (b). Jarvis's sentencing transcript contains no indication that he previously has been convicted of burglary. OCGA §§ 16-4-8 and 16-8-41 were last amended in 1977 and 1999, respectively, well before the acts underlying the Tucker brothers' conspiracy convictions were committed in 2016. OCGA § 16-7-1 (b) was last amended in 2012. See Ga. L. 2012, pp. 899, 907-908, § 3-1; OCGA § 16-7-1 (b) (2016).

Georgia law bars conviction for a crime that arises from the same criminal conduct included as a matter of fact or as a matter of law in another crime for which the defendant has been convicted. To determine if an aggravated assault with a deadly or offensive weapon, indicted under OCGA § 16-5-21 (a) (2), is a lesser included offense of armed robbery, we apply the "required evidence" test set forth in *Drinkard v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006). Under that test, the important question is whether, looking at the evidence required to prove each crime, one of the crimes was established by proof of the same or less than all the facts required to establish the commission of the other crime charged. . . . [T]here is no element of aggravated assault with a deadly or offensive weapon, OCGA § 16-5-21 (a) (2), that is not contained in armed robbery, OCGA § 16-8-41 (a).[8] Consequently, convictions for both offenses will merge — but only if the crimes are part of the same act or transaction.

*Haynes v. State*, 322 Ga. App. 57, 60 (2) (743 SE2d 617) (2013) (citations and punctuation omitted); accord *Jefferson v. State*, 360 Ga. App. 75, 79-80 (2) (860 SE2d 614) (2021).

Thus, for purposes of the merger doctrine, "a lesser crime is included in the crime charged if the evidence actually presented at trial to establish the elements of

[8] As discussed above, OCGA § 16-8-41 was last amended in 1999. The current version of OCGA § 16-5-21 (a) (2) is the same as was in effect at the time of the September 2011 home invasion. See Ga. L. 2006, pp. 379, 383, § 4; compare OCGA § 16-5-21 (a) (2) (2021), with OCGA § 16-5-21 (a) (2) (2011).

the crime charged also establishes all the elements of the lesser crime." *Young v. State*, 272 Ga. App. 304, 308 (2) (612 SE2d 118) (2005) (citation and punctuation omitted). It therefore is possible "to first commit aggravated assault by frightening the victim with a weapon and immediately thereafter to commit armed robbery by proceeding to use the weapon to rob the victim." Id. ("If separate facts are used to prove each crime, the defendant may be convicted of both crimes."); accord *Smith v. State*, 354 Ga. App. 882, 888 (3) (842 SE2d 305) (2020) ("[W]hen one crime is completed before the other begins, there is no merger.") (citation and punctuation omitted); *Haynes*, 322 Ga. App. at 61 (2) ("If the underlying facts show that the aggravated assault was completed prior to the armed robbery, or vice versa, there is no merger."). Where, however, "the same assault is used to support a charge of aggravated assault and a charge of armed robbery, the aggravated assault conviction must merge with the conviction of armed robbery." *Young*, 272 Ga. App. at 308 (2).

(i) Here, the aggravated assault and armed robbery of N. A. were two distinct episodes. The aggravated assault was completed when Walker held a shotgun to N. A.'s head outside of his home and escorted him into the home. The armed robbery subsequently occurred when Jackson guarded N. A. with a revolver against a wall inside the home while another intruder removed his wallet and jewelry and Walker

24

and Jason ransacked the victims' home. See *Henderson v. State*, 285 Ga. 240, 244 (4) (675 SE2d 28) (2009) (defendant's aggravated assault and armed robbery convictions did not merge because the aggravated assault was completed when the defendant pointed a gun at the victim outside of a residence, inside of which the armed robbery of the victim subsequently occurred); *McKenzie*, 302 Ga. App. at 539 (1) (a) (defendant's armed robbery and aggravated assault convictions did not merge because he had completed the armed robbery before he pushed his gun against the victim's neck and asked whether she wanted to die); *Ransom v. State*, 298 Ga. App. 360, 361-362 (1) (680 SE2d 200) (2009) (defendant had completed the crime of aggravated assault when he pointed a gun at and threatened to kill the victim, after which he committed an armed robbery when he ordered the victim to empty his pockets at gunpoint). Consequently, Jarvis's convictions for the aggravated assault and armed robbery of N. A. (Counts 6 and 13) do not merge.

(ii) In contrast, the aggravated assault and armed robbery of K. A. were both part of the same continuous transaction that began when one intruder pointed a gun at her, ordered her downstairs, pulled a necklace from her neck, and demanded money, jewelry, and the location of a safe. The trial court therefore should have merged Jarvis's convictions for Counts 7 and 14. See *Jefferson*, 360 Ga. App. at 79-

25

80 (2) (the defendant's convictions for aggravated assault and armed robbery should have merged because they were "part of the same transaction"); *Haynes*, 322 Ga. App. at 61 (2) ("[T]he striking of the husband with [a] handgun and the commission of [an] armed robbery were not separate and distinct acts committed in sequential order but rather were one uninterrupted criminal transaction.") (citation and punctuation omitted); *Young*, 272 Ga. App. at 308 (2) (the defendants' aggravated assault convictions merged with their armed robbery convictions where one defendant brandished a gun at the same time that the defendants made clear that they intended to rob the victims). We therefore vacate Jarvis's conviction for aggravated assault under Count 14 and instruct the trial court to resentence him accordingly on remand. See generally *Sears*, 292 Ga. at 73-74 (6).

5. Although not addressed by either party, the trial court committed two sentencing errors that require us to also vacate some of Jarvis's sentences for resentencing on remand.

(a) *False imprisonment of a victim under the age of 14.* Count 12 of the indictment charged Jarvis with the false imprisonment of N. A. and K. A.'s daughter S. A., who was three years old at the time. A defendant convicted of false imprisonment of a victim under the age of 14 and not the defendant's child is subject

26

to a split sentence, which must include at least one year in prison, to be followed by at least one year of probation. OCGA §§ 16-5-41 (b), (c); 17-10-6.2 (a) (2), (b). A sentence that does not comply with the OCGA § 17-10-6.2 split-sentence requirement is void. See *New v. State*, 327 Ga. App. 87, 106-109 (5) (755 SE2d 568) (2014), disapproved in part on other grounds by *Hill v. State*, 360 Ga. App. 143, 146, n. 4 (860 SE2d 893) (2021). We are required to correct a void sentence, regardless of whether either party has raised the error on appeal. See *von Thomas v. State*, 293 Ga. 569, 573 (2) (748 SE2d 446) (2013) ("[A] sentence which is not allowed by law is void, and its illegality may not be waived.") (citation, punctuation, and emphasis omitted).

Under OCGA § 17-10-6.2, the trial court here was required to impose a total sentence for Jarvis's Count 12 conviction that included at least one year of probation. See OCGA §§ 16-5-41 (c); 17-10-6.2 (a) (2), (b). Consequently, his ten-year prison sentence for Count 12, which includes no probation, is void. See *New*, 327 Ga. App. at 106-109 (5); see also *Collins v. State*, 358 Ga. App. 289, 290-291 (1) (855 SE2d 40) (2021) (the defendant's ten-year prison sentence for false imprisonment of a victim under the age of fourteen was void for failure to comply with OCGA § 17-10-

6.2).[9] We therefore vacate that sentence and instruct the trial court to resentence Jarvis in accordance with OCGA § 17-10-6.2 on remand.

(b) *Kidnapping a victim under the age of 14.* Count 19 of the indictment charged Jarvis with kidnapping S. A. A defendant convicted of kidnapping a child under the age of 14 also is subject to a split sentence, which must include a mandatory minimum 25-year prison term, to be followed by life on probation. OCGA §§ 16-5-40 (d) (2), (e); 17-10-6.1 (b) (2) (A).[10] A "deviation below the minimum requirements

---

[9] The current version of OCGA § 17-10-6.2 — which, as relevant here, became effective in 2017 — provides that "the requirement that the court impose a probated sentence of at least one year shall only apply to the final consecutive sentence imposed." OCGA § 17-10-6.2 (b) (2021); see Ga. L. 2017, pp. 489, 491-492, § 5; *Hardin v. State*, 344 Ga. App. 378, 388 (2) & n. 11 (810 SE2d 602) (2018). Under the version of the statute in effect at the time of the offenses in this case, however, "the statute required a split sentence for *each* conviction for applicable . . . offenses." See *Hardin*, 344 Ga. App. at 388 (2); accord *State v. Riggs*, 301 Ga. 63, 64-67 (1) (799 SE2d 770) (2017); see also generally Ga. L. 2006, pp. 379, 395, § 21; OCGA § 17-10-6.2 (b) (2011). The current version of the statute does not apply retroactively. *Hardin*, 344 Ga. App. at 388-389 (2); see also *Searcy v. State*, 162 Ga. App. 695, 698 (2) (291 SE2d 557) (1982) (this Court applies the sentencing law in effect at the time the crime was committed); accord *Richardson v. State*, 334 Ga. App. 344, 346-347 (1) (779 SE2d 406) (2015). OCGA § 16-5-41 was last amended in 2006, well before any of the crimes at issue here were committed.

[10] OCGA § 16-5-40 was last amended in 2009. The relevant provisions of the current version of OCGA § 17-10-6.1 (b) (2) (A) are the same as were in effect at the time of the September 2011 home invasion. See Ga. L. 2011, pp. 752, 759, § 17; Ga. L. 2006, pp. 379, 393-394, § 20; compare OCGA § 17-10-6.1 (b) (2) (A) (2021), with OCGA § 17-10-6.1 (b) (2) (A) (2011).

of OCGA § 17-10-6.1 (b) results in a void sentence." *Taylor v. State*, 259 Ga. App. 457, 461 (3) (576 SE2d 916) (2003); accord *Bryant v. State*, 229 Ga. App. 534, 535-536 (1) (494 SE2d 353) (1997) (a sentence not in compliance with OCGA § 17-10-6.1 (b) is void). Consequently, Jarvis's 20-year prison sentence for Count 19 also is void. See *von Thomas*, 293 Ga. at 573 (2); *Taylor*, 259 Ga. App. at 461 (3). We therefore similarly vacate that sentence for resentencing on remand.

*Case No. A22A0023*

6. In Case No. A22A0023, Jason first contends that the trial court committed plain error by failing to instruct the jury that one cannot conspire with a government agent or informant.[11] He maintains that, absent such an instruction, the jury may have improperly convicted him of conspiracy (in Counts 1 and 2) based on his communications with government actors. We find no plain error in this regard.

---

The relevant portions of these statutes have remained materially unchanged since before September 2011.

[11] As Jason acknowledges in his appellate brief, because he did not object at trial to the court's failure to charge the jury in this regard, we review this claim for plain error. See OCGA § 17-8-58 (b) (failure to object to any part of the jury charge before deliberations "shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties"); *Lewis v. State*, 350 Ga. App. 143, 149-150 (3) (a) (828 SE2d 386) (2019).

Notably, Jason does not identify any binding precedent supporting this claim but rather cites only federal appellate court decisions.[12] "An error is plain if it is clear or obvious under current law. An error cannot be plain where there is no controlling authority on point." *Wilson v. State*, 351 Ga. App. 794, 798 (1) (b) (833 SE2d 175) (2019) (citation and punctuation omitted). And while decisions of the federal courts of appeal are persuasive, they are not binding on Georgia appellate courts. See *Macon-Bibb County Hosp. Auth. v. Nat. Treasury Employees Union*, 265 Ga. 557, 558 (1) (458 SE2d 95) (1995); *Level*, 273 Ga. App. at 605 (2) (a); accord *Adams v. State*, 284 Ga. App. 534, 540 (3), n. 37 (644 SE2d 426) (2007) (physical precedent only). Consequently, Jason has not met his burden of showing plain error in this regard. See *Wilson*, 351 Ga. App. at 797-798 (1) (b) (finding no plain error in the failure to give a jury instruction where the appellant cited no precedent requiring such an instruction under the circumstances of the case).

7. Jason also challenges the denial of his motion for a directed verdict on Count 4 — possession of a firearm during the commission of a felony. He contends that this conviction cannot stand because the underlying felony — conspiracy to commit an

---

[12] *Armstrong v. State*, 310 Ga. 598, 605-606 (4) (852 SE2d 824) (2020), relied on in part by Jason, does not address conspiracies, much less jury instructions on conspiring with government agents.

armed robbery — is not a "crime against or involving the person of another," as required by the applicable statutory scheme. We disagree.

This enumeration of error involves statutory construction, which is a legal issue that we address de novo. See *State v. Hammonds*, 325 Ga. App. 815, 815 (755 SE2d 214) (2014). The statute at issue here provides, in relevant part: "Any person who shall have on or within arm's reach of his or her person a firearm . . . during the commission of, or the attempt to commit: (1) Any crime against or involving the person of another . . . and which crime is a felony, commits a felony . . . ."[13] OCGA § 16-11-106 (b).[14] In Count 4 of Jason's indictment, the State alleged that he violated OCGA § 16-11-106 when "on or about the 28th day of January, 2016, [he] did then and there unlawfully have within arms['] reach of his person a firearm, to wit: a handgun, during the commission of a felony, to wit: Conspiracy to Commit the Crime of Armed Robbery . . . which is a crime against the person of another . . . ."

_____

[13] Conspiracy to commit armed robbery is a felony. Compare OCGA § 16-4-8, with OCGA § 16-8-41 (b). As discussed above, these statutes were last amended in 1977 and 1999, respectively, well before any of the crimes at issue here were committed.

[14] This statute was last amended in 2001.

Jason contends that, because conspiracy "is a crime of an agreement, not a crime against a person," one cannot commit the crime of possession of a firearm during the commission of conspiracy to commit armed robbery. When considering the meaning of a statute, we must "presume that the General Assembly meant what it said and said what it meant" and afford the statutory text its "plain and ordinary meaning." *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (citations and punctuation omitted). Thus, absent clear evidence that the General Assembly intended a contrary meaning, we assign words in a statute their "ordinary, logical, and common meanings." *Turner v. Ga. River Network*, 297 Ga. 306, 308 (773 SE2d 706) (2015) (citation and punctuation omitted).

The parties have not cited, and research has not revealed, any binding precedent addressing the issue presented here. Nevertheless, we conclude that a conspiracy to commit an armed robbery necessarily "involv[es] the person of another" in two ways, insofar as it requires at least one co-conspirator and at least one victim. And Jason's argument that conspiracy "is a crime of agreement, not a crime against a person" misses the mark on both points — in a conspiracy to commit an armed robbery, the very nature of the agreement itself requires both a co-conspirator and a victim. That the victim here was fictional matters not for our analysis. Because the

agreement is the essence of a conspiracy, see *Dorsey*, 331 Ga. App. at 489 (2), what matters is that the *agreement itself* entailed a victim. Thus, just as impossibility is not a defense to criminal attempt — another inchoate crime — impossibility here does not change the fact that Jason was found guilty of agreeing with another person to commit the armed robbery of another person. See generally OCGA § 16-4-4 ("It is no defense to a charge of criminal attempt that the crime the accused is charged with attempting was, under the attendant circumstances, factually or legally impossible of commission if such crime could have been committed had the attendant circumstances been as the accused believed them to be."). We therefore hold that conspiracy to commit an armed robbery may form the basis for a conviction of possession of a firearm during the commission of a felony, and we affirm the trial court's ruling on this issue.

8. Jason contends that his trial counsel rendered ineffective assistance by failing to raise statute-of-limitation defenses to several counts of his indictment and that his post-conviction counsel rendered ineffective assistance by failing to raise his trial counsel's ineffectiveness during his motion for a new trial.[15]

---

[15] We do not address the substance of Jason's statute-of-limitation claims because he did not raise them before the trial court. See *Jackson v. State*, 252 Ga. App. 16, 16-17 (2) (555 SE2d 240) (2001) ("Issues presented for the first time on

33

"In Georgia, ineffectiveness claims must be raised and pursued at the earliest practicable moment, which for a claim of ineffective assistance of trial counsel is at the motion for new trial stage if the defendant is no longer represented by the attorney who represented him at trial." *Moore v. State*, 311 Ga. 506, 513 (6) (858 SE2d 676) (2021) (citation and punctuation omitted). Here, the trial court appointed new counsel to represent Jason during his motion for a new trial. In that motion, however, Jason's new counsel raised a single ineffective-assistance claim based only on trial counsel's failure to request limiting instructions before audio recording transcripts were shown

appeal furnish nothing for us to review, for this is a court for correction of errors of law committed by the trial court where proper exception is taken, because one may not abandon an issue in the trial court and on appeal raise questions or issues neither raised nor ruled on by the trial court.") (citation and punctuation omitted); see also generally *Vaughn v. State*, 324 Ga. App. 289, 292-293 (750 SE2d 375) (2013) (a statute-of-limitation defense can be waived), disapproved in part on other grounds by *In the Interest of N. T.*, 355 Ga. App. 205, 212 (2), n. 7 (843 SE2d 877) (2020); accord *Obi v. State*, 230 Ga. App. 476, 477 (3) (496 SE2d 556) (1998) (the defendant waived appellate review of his claim that the statute of limitation barred his prosecution by failing to obtain a trial court ruling on that issue); overruled in part on other grounds by *Sentinel Offender Svcs. v. Harrelson*, 286 Ga. 665, 667 (1), n. 2 (690 SE2d 831) (2010). Nevertheless, we note that the State alleged and submitted evidence showing that the statutes of limitation were tolled as to the 2011 home invasion offenses because the identities of the perpetrators were unknown until August 2015, which was two years and three months before the indictment issued. See OCGA § 17-3-2 (2) ("The period within which a prosecution must be commenced under Code Section 17-3-1 [the general criminal statute-of-limitation provisions] or other applicable statute does not include any period in which . . . [t]he person committing the crime is unknown or the crime is unknown . . . .").

34

to the jury. Thus, Jason waived any claim that his trial counsel was ineffective by failing to raise statute-of-limitation defenses. See *Wilson v. State*, 286 Ga. 141, 144 (4) (686 SE2d 104) (2009) (where trial counsel's effectiveness was raised in a motion for a new trial, "any claims of ineffective assistance by trial counsel not raised at that time are waived"); *Wooten v. State*, 240 Ga. App. 725, 727 (2) (b) (524 SE2d 776) (1999) ("The failure of post-judgment counsel to raise a particular ground for ineffective assistance at the new trial hearing waives appellate review.").

Moreover, a defendant may not

resuscitate a waived claim of trial counsel ineffectiveness on appeal by recasting the claim as one of ineffective assistance of motion for new trial counsel, because allowing such bootstrapping would eviscerate the fundamental rule that ineffectiveness claims must be raised at the earliest practicable moment and would promote serial appellate proceedings.

*Moore*, 311 Ga. at 513 (6) (citation and punctuation omitted); accord *Elkins v. State*, 306 Ga. 351, 362 (4) (b) (830 SE2d 217) (2019). Thus, where an appellant's "claim of ineffective assistance of motion for new trial counsel is merely a camouflaged claim of ineffectiveness by trial counsel, it is procedurally barred." *Moore*, 311 Ga. at 513-514 (6) (citations and punctuation omitted). We therefore reject Jason's

35

request to remand this case for a hearing in the trial court on his claim that his post-conviction counsel rendered ineffective assistance. See *Wilson*, 286 Ga. at 145 (4); accord *Robinson v. State*, 306 Ga. 614, 614, 616-617 (2) (b) (832 SE2d 411) (2019); compare *Elkins*, 306 Ga. at 363 (4) (c) ("When there has been no evidentiary hearing in the trial court on a *preserved* claim of ineffective assistance of counsel, [an appellate court] generally must remand the case to the trial court for an evidentiary hearing on the issue.") (emphasis supplied). If Jason "wishes to pursue a claim that his motion for new trial counsel was ineffective, he must do so through a petition for a writ of habeas corpus." *Moore*, 311 Ga. at 514 (6).

9. In a conclusory footnote lacking any analysis in his appellate brief, Jason contends that several of his convictions should merge. While we strongly disapprove of Jason's appellate counsel's failure to fully brief these issues, we nevertheless address them because they cannot be waived. See *Nazario v. State*, 293 Ga. 480, 485 (2) (b) (746 SE2d 109) (2013) ("[M]erger claims cannot be waived because a conviction that merges as a matter of law or fact with another conviction is void . . . .").

(a) Although not addressed by Jason, his two conspiracy convictions (conspiracy to commit armed robbery (Count 1) and conspiracy to commit burglary

36

(Count 2), for which the trial court imposed consecutive ten-year prison sentences) must be merged for the reasons stated above in Division 4 (a), as conceded by the State. We therefore vacate Jason's conviction under Count 2.

(b) Jason argues that his convictions for the aggravated assaults of N. A. (Count 13) and K. A. (Count 14) should have merged into his convictions for the armed robberies of N. A. (Count 6) and K. A. (Count 7). For the reasons stated above in Division 4 (b), we agree that (as the State concedes) the convictions naming K. A. as a victim (Counts 7 and 14) also must be merged, while the convictions naming N. A. as a victim (Counts 6 and 13) should stand. We therefore vacate Jason's conviction under Count 14.

(c) Finally, Jason maintains that his convictions for false imprisonment (Counts 9-12) must merge with his kidnapping convictions (Counts 16-19).[16] We disagree.

"A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority." OCGA § 16-5-41 (a). "A person commits the offense of kidnapping when

---

[16] The victims of the false imprisonment convictions (Counts 9-12) were the same as the victims of the kidnapping convictions (Counts 16-19), and each crime was alleged to have been committed on the same date, during the September 2011 home invasion.

37

such person abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will." OCGA § 16-5-40 (a).[17] Notably, the kidnapping statute expressly provides that "[t]he offense of kidnapping shall be considered a separate offense and shall not merge with any other offense." OCGA § 16-5-40 (c). Consequently, Jason's claim that Counts 9-12 merge with Counts 16-19 is foreclosed by statute.

10. Although also not addressed by Jason, his ten-year prison sentence for Count 12 (false imprisonment of S. A.) and his twenty-year prison sentence for Count 19 (kidnapping of S. A.) are void for the reasons stated above in Division 5. Consequently, we vacate those sentences with instructions for the trial court to resentence Jason on remand in accordance with the statutory provisions identified in Division 5.

In sum, in Case No. A21A1760, we: (i) vacate Jarvis's conspiracy conviction under Count 2; (ii) vacate his conviction for aggravated assault under Count 14; (iii) vacate his sentence for false imprisonment on Count 12; (iv) vacate his sentence for kidnapping under Count 19; and (v) remand the case with instructions for the trial

[17] As discussed above, OCGA §§ 16-5-40 and 16-5-41 were last amended in 2009 and 2006, respectively.

court to resentence him in accordance with this opinion. In Case No. A22A0023, we similarly: (i) vacate Jason's conspiracy conviction under Count 2; (ii) vacate his conviction for aggravated assault under Count 14; (iii) vacate his sentence for false imprisonment on Count 12; (iv) vacate his sentence for kidnapping under Count 19; and (v) remand the case for the trial court to resentence him in accordance with this opinion. We otherwise affirm the trial court's judgments in both cases.

*Judgments affirmed in part and vacated in part, and cases remanded for resentencing in Case Nos. A21A1760 and A22A0023. Rickman, C. J., concurs; and McFadden, P. J., concurs specially in Division 1 and 2 and concurs fully in the remainder of the opinion.*

A21A1760, A22A0023. TUCKER v. THE STATE (two cases).


MCFADDEN, Presiding Judge, concurring fully in part and specially in part.

I agree that the convictions of both Jarvis and Jason Tucker must be affirmed. And I agree with the majority's disposition of each of the issues before us. But I do not agree with all that is said in the majority opinion.

Division 1, which rejects a plain-error argument, purports to resolve a novel issue that the parties do address, but that we do not need to reach. Elsewhere in that analysis, the majority finds waiver where a fair reading would find incorporation by reference. Division 2 (b), which rejects a severance argument, incorrectly suggests that severance is discretionary in every case. I concur fully in the remainder of the opinion.

1. *Plain error in allowing testimony.*

Jarvis Tucker argues that certain testimony was inadmissible hearsay and improper bolstering and that the trial court's failure to exclude it was plain error. The majority rejects that argument, finding that Jarvis Tucker cannot satisfy the requisites of the plain error standard. I agree.

(a) *Dicta.*

But in footnote 4 the majority reaches out to decide a novel question regarding *how* that standard would have been applied. Jarvis Tucker makes the novel contention that a rule applicable under harmless-error analysis should be extended to plain-error analysis: that for purposes of the analysis the testimony alleged to have been improperly bolstered must be disregarded. This appears to be an issue of first impression. While the resolution the majority purports to adopt in footnote 4 is plausible, it is not self-evidently correct.

As the majority explains, even if the allegedly bolstered testimony is disregarded, Jarvis Tucker has not met the third prong of the plain-error standard: he has not shown that the error likely affected the outcome. For this reason, it is not necessary to reach the merits of Jarvis Tucker's novel contention, and the majority's purported rejection of that contention is dicta.

2

(b) *Purported waiver.*

I also do not agree with the majority that Jarvis Tucker abandoned the fourth prong of the plain-error standard (requiring a showing that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings). To the contrary, I read his appellate brief to argue that the fourth prong is satisfied for the same reasons as the third prong (likely affected the outcome), which Jarvis Tucker briefed in detail and which argument, as noted above, the majority correctly rejects. So Jarvis Tucker's argument about the fourth prong fails along with his argument about the third. But it fails on the merits.

Our rules encourage parties to adopt material from other briefs filed in this court. Court of Appeals Rule 23 (a). Per force we should not discourage them from adopting material from within the same brief. We should not give the bar cause to fear that they must burden us with repetitive material in order to avoid findings of abandonment.

2. *Ineffective assistance of trial counsel — severance.*

Jarvis Tucker argues that his trial counsel rendered ineffective assistance by failing to ask the trial court to sever the 2011 home invasion charge and the 2016 conspiracy charge. The majority rejects this argument on the ground that a severance

3

motion likely would have been futile. The trial court had denied just such a motion made by Jarvis Tucker's co-defendant, Jason Tucker, and Jarvis Tucker had not presented any additional evidence that would point to a different resolution.

It is true of course that trial counsel cannot be ineffective for failing to make a futile motion. And I agree with the majority that the motion in this case likely would have been futile. But it is futile not simply because the trial court rejected the co-defendant's motion. It is futile because the trial court rejected the co-defendant's motion *and* because severance was not mandatory under the circumstances of this case.

Whether to sever charges is not always a matter of discretion for a trial court. There are times when severance is mandatory upon a defendant's motion — "[w]henever two or more offenses have been joined for trial solely on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses." *Dingler v. State*, 233 Ga. 462, 463 (211 SE2d 752) (1975) (citation and punctuation omitted). If severance had been mandatory in this case, the motion to sever would not have been futile.

But severance was not mandatory in this case. "[O]ffenses have not been joined *solely* because they are of the same or similar character when the evidence of one

4

offense can be admitted as [other acts] evidence during the trial of the other offense; and severance is not mandatory in such a case." *Algren v. State*, 330 Ga. App. 1, 3 (1) (764 SE2d 611) (2014) (citations and punctuation omitted; emphasis in original). See also *Johnson v. State*, 257 Ga. 731, 732-733 (2) (a), (c) (363 SE2d 540) (1988); *Stewart v. State*, 277 Ga. 138, 140 (587 SE2d 602) (2003).

So it is here. Even if the charges were severed, the trial court could have admitted the evidence of the one crime in the trial of the other under OCGA § 24-4-404 (b) (permitting evidence of other crimes for purposes other than "to prove the character of a person in order to show action in conformity therewith . . . , including, but not limited to proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"). See *Jernigan v. State*, 357 Ga. App. 415, 419-426 (2) (848 SE2d 707) (2020) (trial court did not err in admitting evidence of defendant's conviction for a 2002 armed robbery conviction as other acts evidence under Rule 404 (b) in defendant's trial on charge of 2012 armed robbery).

Consequently, the trial court could have, in an exercise of discretion, denied a motion to sever the charges in this case. See *Stewart*, 277 Ga. at 140; *Johnson*, 257 Ga. at 733 (2) (b), (c). And given that the trial court in fact denied the motion to sever filed by the co-defendant in this case, I agree with the majority that the failure of

5

Jarvis Tucker's trial counsel to file such a motion was not deficient because the motion likely would have been futile.